**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harvey Ray HATCHER, Defendant-Appellant.**

**No. 28021.**

United States Court of Appeals, Fifth Circuit.

April 1, 1970.

Rehearing Denied April 16, 1970.

Richard E. Harrison, Dallas, Tex., for appellant.

Eldon B. Mahon, U. S. Atty., B. H. Timmins, Jr., Asst. U. S. Atty., Dallas, Tex., for appellee.

Before WISDOM, GOLDBERG and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Harvey Ray Hatcher, Defendant-Appellant, was tried in the Northern District of Texas and appeals his jury

conviction for unlawfully, willfully and knowingly uttering metal coins in the resemblance of coins of the United States, in violation of Title 18 U.S.C. § 486.

Appellant was indicted on March 21, 1968 by a federal grand jury in the Northern District of Texas on two counts of violation of Title 18, U.S.C. § 486.[1] In essence, count one charged the appellant with passing a counterfeit 1916–D ten cent coin to Oscar Utay, a pawn broker, in Dallas, Texas on or about February 15, 1965. Count two charged the appellant with passing 48 counterfeit 1931–S one cent coins to Nathan Shay in Dallas, Texas on or about July 27, 1967.

Prior to trial, the defendant moved for severance and separate trial of the two counts which, after argument and hearing was denied.

With regard to count 1, the evidence indicates that the defendant, on February 15, 1965 pawned a 1916–D ten cent coin at the shop of Oscar Utay. At the time Mr. Utay received the coin, represented by the defendant as genuine, he sent it to another coin dealer in the Dallas area, one more knowledgeable than he in appraising rare coins, to determine its genuineness. Mr. Utay received word from the dealer that the coin appeared genuine, whereupon he loaned to the defendant $250.

A chemist for the Bureau of the Mint, qualified as an expert witness, testified that in his opinion, the dime in question was counterfeit. The defendant took the stand in his own behalf and admitted that this transaction took place but denied that he knew the coin was counterfeit at the time it was pawned.

Regarding the second count of the indictment, the testimony elicited at trial revealed the following facts. The defendant and Nathan Shay first became acquainted in Houston when Mr. Shay was proprietor of the ABC coin shop. Although no coin transactions took place at that time, the subject of coins was discussed. This meeting apparently took place sometime in 1962, subsequent to which, Mr. Shay moved to Dallas where he has continued to reside. In 1967, the defendant and Mr. Shay met by chance outside a coin shop in Dallas. Recognizing one another from the earlier Houston meeting, they began discussing the subject of coins. The defendant told Mr. Shay that he had some 1950 and 1939 D nickels that he wanted to sell and wanted to know if Mr. Shay could move (sell) a large amount of coins.

A few days later, the defendant called Mr. Shay and requested that they meet at a local restaurant. At this meeting, the defendant gave Mr. Shay a roll of 1931 S pennies to sell. The defendant also asked Mr. Shay if he could sell a 1939 D nickel. When Mr. Shay asked if the nickels were stolen, the defendant replied, "You don't have to worry about it, they belong to me. I have been collecting them for a long time." Although Mr. Shay did not receive any nickels on this occasion, he did receive ten rolls of 1939 D nickels from the defendant at a later meeting. After unsuccessful attempts to sell the nickels to local coin dealers, Mr. Shay returned the nickels to the defendant, telling him that he (Mr. Shay) had been told that the nickels were counterfeit. The defendant said that he wasn't sure whether they were counterfeit or not.

Mr. Shay's attempts to sell the nickels to local coin dealers was brought to the attention of the Secret Service. When Mr. Shay learned that the Secret Service was looking for him, he contacted them and related his activities. As a consequence, when the defendant called Mr. Shay at his apartment several days

---

1. Whoever, except as authorized by law, makes or utters or passes, or attempts to utter or pass, any coins of gold or silver or other metal, or alloys of metals, intended for use as current money, whether in the resemblance of coins of the United States or of foreign countries, or of original design, shall be fined not more than $3,000 or imprisoned not more than five years, or both.

later, a Secret Service agent listened to the conversation on an extension phone. The defendant in response to a question from Mr. Shay as to whether the pennies were bad, stated, "Those coins are not counter * * * You don't have to worry about those coins, there is no heat on them."

In further testimony, the expert witness from the Bureau of the Mint expressed the opinion that the 1931 S one cent coins were also counterfeit.

Taking the stand in his own behalf, the defendant, on direct examination, testified to facts concerning both counts one and two of the indictment. Again, as in count one, his defense was that he did not know the coins in question were counterfeit. In conducting cross examination, counsel for the government went into both counts one and two as well as the facts surrounding the defendant's possession of the 1950 and 1939 D nickels.

The jury, after deliberation, was unable to reach a verdict on count one but found the defendant guilty as charged on count two.

The defendant asserts in his first point of error that the trial court's denial of his motion to sever and the failure to try the two counts separately prejudiced his right to a fair and impartial trial. The government contends that joinder was proper under rule 8(a), Fed. R.Crim.P., and that such joinder was not prejudicial.

■■ It seems clear that joinder was proper under rule 8(a), Fed.R.Crim.P.[2] and the only question remaining is whether such joinder was prejudicial to the defendant in this case. While it is true that some two and one-half years elapsed between the alleged commission of the offenses in the indictment, this,

in itself, is insufficient to show prejudice.

The defendant relies heavily on the case of Drew v. United States, 118 U.S. App.D.C. 11, 331 F.2d 85 (1964) to support his contention that failure to sever was prejudicial. The court in *Drew* delineated three circumstances in which the criminal defendant may be prejudiced: (1) the defendant may be embarrassed or confounded in preparing separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find.

Under the first circumstance, there is nothing to indicate that the defendant was embarrassed or confounded in preparing his defenses. His defense to both counts in the indictment was his lack of knowledge that the coins were, in fact, counterfeit.

The defendant's contentions under (2) above are wholly without merit. The verdict of the jury finding the defendant guilty of count two and the jury's inability to reach a verdict on count one make it obvious that the evidence of guilt as to count two was not used by the jury to carry over or infer a criminal disposition or guilt with respect to count one, upon which the jury was unable to agree.

The third argument of the defendant, that the jury cumulated the evidence, is likewise without merit. The evidence as to each count was separately and distinctly presented by government counsel and the trial judge admonished and instructed the jury at the outset of his charge that "[E]ach count involved a

---

**2.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

separate felony, and must be considered and decided on its own facts and merits." There is nothing to indicate that the jury ignored this admonition and the fact that the jury was unable to agree on a verdict on count one while finding the defendant guilty on count two bears witness that the jury did so consider the counts separately.

The opinion in *Drew, supra,* went on to note that:

"[E]ven where the evidence would not have been admissible in separate trials, if, from the nature of the crimes charged, it appears that the prosecutor might be able to present the evidence in such a manner that the accused is not confounded in his defense and the jury will be able to treat the evidence relevant to each charge separately and distinctly, the trial judge need not order severance or election at the commencement of the trial. 331 F.2d at 91–92.

While it is not so clear that the evidence of the first alleged crime would not be admissible in a trial of the second, and vice-versa, the instant case falls squarely within the above described circumstances.

The defendant additionally contends, apparently as an afterthought in view of the fact that it is here raised for the first time, that he was prejudiced by not being afforded the right to testify on one count and to remain silent, if he so desired, on the other. The defendant had a "fair choice" to take the stand or to remain silent, "uninfluenced to any significant degree" by the joinder of the two offenses. Dunaway v. United States, 92 U.S.App. 299, 205 F.2d 23 (1953). The defendant elected to testify on both counts and his defense to both counts was identical. There was no objection before or during trial that his defenses were inconsistent or that he would be prejudiced by taking the stand as to one count and remaining silent as to the other.

Viewing the record as a whole, there is nothing to indicate that the trial court abused its discretion in refusing to sever the two counts of the indictment.

■■ In his second point of error, the defendant asserts what is generally regarded as a correct rule of evidence— that proof that the accused has committed another and separate offense is not competent for the purpose of proving that he is guilty of the offense with which he is charged. The testimony of Nathan Shay relating to the defendant's possession of the nickels was both relevant and competent and such possession was so related in character, time and place with the transfer of the pennies that it tended to support the conclusion that they were part of a common scheme or plan, and admissible as a well recognized exception to the general rule stated above. As properly pointed out by counsel for the government, the testimony in question revealed facts which were part of the res gestae and, additionally, was probative of the defendant's intent and knowledge of the counterfeit nature of the coins. The court properly gave a limiting instruction as to the use of the testimony by the jury and no prejudice resulted thereby.

■ Defendant's last contention, that he was prejudiced by cross-examination which exceeded the scope of direct examination, is without merit. During cross-examination, counsel for the government asked the defendant questions regarding, inter alia, his possession and transfer of the 1939 D nickels, a subject which was not broached in direct examination. It was clearly proper for the trial court to allow such cross-examination as it bore on the defendant's intent and knowledge. The court offered to give a limiting instruction at the time the testimony was elicited but defense counsel declined. The court in its charge to the jury properly advised them of the limited purpose for which the testimony could be used.

No error appearing and no abuse of discretion being shown, the judgment is affirmed.