UNITED STATES of America, Appellee,

v.

Percy FRANKLIN, Appellant.

No. 71–1006.

United States Court of Appeals, Eighth Circuit.

Dec. 7, 1971.

Bruce C. Houdek, Public Defender D. Mo., Kansas City, Mo., for appellant.

Anthony P. Nugent Jr., Asst. U. S. Atty. Kansas City, Mo., Bert C. Hurn, U. S. Atty., for appellee.

Before GIBSON, BRIGHT, and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

Percy Franklin appeals from a jury conviction on three counts of causing the interstate transportation of forged checks in violation of 18 U.S.C. §§ 2 and 2314. Judge Becker sentenced Franklin to serve six months imprisonment on Count I, plus two years of probation on Counts II and III. Franklin brings this timely appeal asserting that the trial court committed plain error in failing to grant him a separate trial on Counts II and III, and in failing to instruct the jury to consider the evidence only as it related to the individual counts charged in the indictment. Additionally, he contends that the evidence was insufficient to sustain the convictions under Counts II and III. We reject these contentions and affirm.

Under Count I, the government established that on August 12, 1969, Franklin cashed a payroll check of the Sam Dasta Construction Company at a Kansas City, Missouri, retail establishment. This check, one of several which had been stolen from the Dasta Construction Company, was drawn to Franklin's order and bore the signature "Sam Dasta." Sam Dasta had been dead for twenty years.

The checks specified under Counts II and III were forged from stolen personal check blanks of one Mark C. Blumenstein. Count II charged that Franklin cashed a check payable to his order and bearing the signature "Mark C. Blumenstein" on December 28, 1968; Count III charged Franklin with cashing a similar Blumenstein check on January 27, 1969. Both checks were cashed in Kansas City, Missouri.

During the trial, the government also introduced testimony which showed that Franklin had attempted to cash another Dasta Construction Company payroll check at a Kansas City store on August

9, 1969, three days prior to the incident described in Count I. When the cashier of this store called for the manager to obtain approval to cash the check, Franklin grabbed the check, left the cigarettes which he had intended to purchase on the counter, and "flew out the door."

On this appeal, Franklin concedes that the damaging testimony of the cashier and manager provides sufficient evidence of wrongful intent to support the jury verdict on Count I, but he asserts that the prosecution failed to produce any similar evidence of fraudulent intent sufficient to support the convictions under Counts II and III. He stresses that the check cashing incidents specified in Counts II and III occurred approximately seven months prior to the check cashing incidents related to Count I. Franklin also argues that he sustained prejudice from the joinder of the three counts because the jury could consider the evidence introduced under Count I in passing upon his guilt under Counts II and III. Franklin asserts that, under those circumstances, the district court should have sua sponte granted him a separate trial on Counts II and III. Finally, he claims that the trial court compounded the error by not specifically instructing the jury that the evidence relating to the check cashing incidents of August 1969 should not influence the verdict under Counts II and III.

In considering these contentions, we note that the record shows that Franklin cashed four other third party checks made payable to him, which proved to be worthless. He cashed these checks at Kansas City stores in late January and early February of 1969, between the time he cashed the Dasta Construction Company check and the time he cashed the Blumenstein checks. We also observe that, when contacted by police officers, Franklin stated that he could not recall the name of the man who allegedly gave him the Blumenstein checks and that he could not give a specific address for the club at which he had allegedly

performed remodeling work in order to earn the amounts shown on the Blumenstein checks. Franklin's explanation for his receipt of the Dasta Construction Company check was equally vague.

■■■ With this factual background we first turn to the joinder-severance issue. Under Fed.R.Crim.P. 8(a), "[t]wo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged * * * are of the same or similar character * * *." Joinder is ordinarily appropriate where, as here, the specific counts refer to offenses of a similar character. See United States v. Simon, 453 F.2d 111 (8th Cir. 1971); United States v. Skillman, 442 F.2d 542, 554–555 (8th Cir. 1971). Although approximately seven months elapsed between the offense charged in Count I and those charged in Counts II and III, this time interval alone does not render the joinder improper. See United States v. Adams, 434 F.2d 756 (2d Cir. 1970); United States v. Hatcher, 423 F.2d 1086 (5th Cir. 1970). Franklin's present contention that the trial court should have sua sponte granted a severance would require trial courts to grant severance whenever evidence of criminal intent might apply to one, but not all, of the counts under which a defendant is charged. We know of no such rule. We believe the burden properly falls upon the defendant to request severance pursuant to Fed.R. Crim.P. 14.

Indeed, in some instances, and perhaps this one, in view of the lenient sentence imposed by the trial court, a defendant may welcome joinder. The ABA Standards pertaining to joinder and severance contain the following commentary under § 1.1:

It has been observed that a defendant may view joinder as working to his advantage. "Being called upon to defend himself in a number of trials may be harassing to a defendant and be a disadvantage f[a]r outweighing the prejudice which may result from a

joinder. It is possible for the prosecutor to withhold some of the charges and file them as detainers, thus making it difficult for defendant to get parole." Remington & Joseph, Charging, Convicting, and Sentencing the Multiple Criminal Offender, 1961 Wis.L.Rev. 528, 538–39. Moreover, similar offense joinder may facilitate concurrent sentencing, to the defendant's advantage. [American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Joinder and Severance at 11 (1967).]

■ We cannot accept appellant's claims that the introduction of evidence relating to Count I unfairly prejudiced his case under Count II and III, and that the district court compounded the error by not specifically instructing the jury that the testimony relating to the attempt to cash the second Dasta Construction Company check on August 9, 1969, could not be considered in passing upon the intent of the defendant when he cashed the checks which were the subjects of Counts II and III. We have recognized in cases involving fraud that

the intent of an accused may be established by collateral facts and circumstances, and that the accused's other acts of kindred character, both prior and subsequent, are admissible if not too remote in time. *See* McConkey v. United States, 444 F.2d 788 (8th Cir. 1971) and cases cited therein.[1]

■ Arguably, all of the check passing incidents shown by the government were admissible to prove the criminal intent necessary to support the convictions on all three counts. Franklin's conduct in cashing one, or perhaps even two, worthless checks may carry insufficient probative force to demonstrate fraudulent intent, but his cashing of seven such checks within a year suggests something more than mere coincidence. In any event, no objection was taken to the introduction of this evidence at trial, and we cannot say that its admission was plain error. It is the function of the trial court to pass upon the probative value of such evidence.

■ In connection with the claims of plain error, we have also examined Judge Becker's instructions. We are satisfied that the case was fairly ex-

---

1. McCormick explains the rationale of admitting evidence of other misconduct of a party as follows:

The policy against proving other misconduct of a party for the sole purpose of evidencing his character or disposition as raising the inference that he was probably guilty of the misconduct charged in the suit, finds expression in civil as well as in criminal cases. Where redress for fraud or misrepresentation is sought, three alternative theories may be available to support the admission of evidence of other misrepresentations or fraudulent conduct by the party.

1. When under the applicable substantive law, knowledge or intent by such party is an essential ingredient for liability, then if it be proved that the party has made other misrepresentations, of similar purport, and false in fact, this tends to show that the representations in suit were made with *knowledge* of their falsity and with *intent* to deceive. This inference does not require that the other representations should have been identical in purport

nor made under precisely like circumstances. Only a reasonable approximation in purport, time and circumstance is needed to ground the inference of knowledge or intent.

2. If the actual making of the misrepresentations charged in the suit is at issue, then to show the party's *conduct* in making the representations or committing the other acts of fraud as alleged, it is competent to prove other representations closely similar in purport or other fraudulent acts, when they may be found to be parts of a larger or continuing *plan* or *design*, of which the acts or misrepresentations in suit may also be found to be an intended part or object. Similarly, it would seem that if the identity of the perpetrator of the fraud in suit were in doubt, then other fraudulent acts of the party so like the conduct in suit as to earmark them as the product of the same mind and hand, would be received to show that he was the perpetrator. C. McCormick, Evidence 345–46 (1954) (footnotes omitted).

plained to the jury. The trial judge specifically advised the jury that the prosecution carried the burden of establishing beyond a reasonable doubt, as to each offense charged, that Franklin had performed the act of causing the check in question to be transported in interstate commerce "wilfully, knowingly, and with unlawful and fraudulent intent, knowing the [check] in each count to have been falsely made and forged." [Tr. 246]

Finding no error, and adequate testimony to support the conviction, we affirm.