**UNITED STATES of America,
Plaintiff,**

v.

**James A. ASHTON, Defendant.**

**Crim. No. 74–258.**

United States District Court,
W. D. Pennsylvania.

Dec. 19, 1974.

Samuel J. Orr, III, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Wendell G. Freeland, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, District Judge.

James A. Ashton, a practicing attorney in Allegheny County, was convicted by a jury of two counts of mail fraud. He filed a "Motion for Arrest of Judgment" and a "Motion for a New Trial." In our opinion both motions should be denied.

The reason assigned in support of the motion for arrest of judgment states: "The indictment does not charge an offense against the United States under the applicable interpretation of the law." This reason was not supported by argument or authority. It is our opinion that each of the eight counts in the indictment adequately charges an offense against the United States, i. e., Count 1, criminal contempt, 18 U.S.C. § 402, and Counts 2 through 8, mail fraud, 18 U.S. C. § 1341. The counts are briefly summarized as follows:

The first count alleged in substance that the defendant settled a wrongful death suit in favor of Mary Ellen Lipscomb, Executrix, for $75,000 before the Honorable Barron P. McCune, a judge of this court, who distributed the proceeds, inter alia, to the widow Lipscomb and her two children and to the defendant, as attorney for the Executrix. A draft was issued payable to the Executrix and the defendant, her attorney, for the sum of $75,000 which was endorsed by the payees and deposited by the defendant in his name in a bank escrow account at the First National Bank and Trust Company of Washington, Pennsylvania. It was alleged that the defendant wilfully disobeyed the order of court in that he ordered and received cashiers checks drawn on his escrow account containing the Lipscomb funds and made the cashiers checks payable to six persons not named as distributees in the court order for distribution which disobedience constituted criminal contempt. After Judge McCune was advised of this alleged conversion, he called the defendant and a few days later defendant restored the Lipscomb funds. Among the six unauthorized persons to receive part of the Lipscomb funds by way of cashiers checks were Beatrice Hommer, $14,250, and Jack Hommer, $3,375.

The 2nd and 3rd counts charged the defendant with mail fraud in that he settled a personal injury action in favor of his client, Beatrice Hommer for $25,000 (GX30), but pursuant to a scheme to defraud and in violation of certain state statutes [1] prohibiting conversion, he falsely represented that the proceeds of the settlement which he received in January, 1972, were not available. Mrs. Hommer's share of the proceeds was not paid to her until March, 1974. In the meantime, the defendant mailed two checks to Mrs. Hommer, each for $2,500 (GX22 and GX23) ostensibly as advances or loans against the "expected" funds which he had deposited in his personal bank account. Retaining her funds for almost 26 months constituted a detriment to Mrs. Hommer. The March, 1974, payment to her, was made out of the funds converted from the Lipscomb estate mentioned in Count 1. (GX40).

---

1. Title 18 Pa.Stat.Ann. §§ 4824, 4834, 3927 and 4113.

Counts 4 through 8 charged the defendant with mail fraud in that he settled a personal injury case in favor of Henry E. and May Watson against two groups of defendants for $2,750 and $4,000 respectively in August and September, 1969, and, pursuant to a scheme to defraud and in violation of certain state statutes [2] prohibiting conversion and forgery, he did not pay the proceeds of the settlement to the Watsons until March, 1970. The indictment alleged that the endorsements of the Watsons on the checks and releases were forged. Five articles of mail matter were mailed by representatives of the insurance companies involved in effecting the settlements of the Watson claims.

Upon defendant's pretrial motion, Count 1 was severed and the prosecution elected to proceed to trial on the mail fraud counts.

The jury found the defendant guilty of Counts 2 and 3, and found him not guilty of Counts 4 through 8. Thereafter, upon motion of the Government, Count 1 was dismissed.

The defendant's pretrial motion to dismiss the indictment was denied.

The defendant's pretrial motion to strike paragraphs 2, 3 and 4 of Counts 2 and 3, and paragraphs 3 and 4 of Counts 4 through 8 was granted.

### I

■ In his motion for a new trial (reasons 1 and 2) the defendant asserts error in that Counts 2 and 3 were not severed from Counts 4 through 8. He cites Rule 8, Fed.R.Crim.P.[3]

Counts 2 through 8 charge violations of the mail fraud statute, 18 U.S.C. § 1341. They are crimes of similar character which may be joined under Rule 8(a). The defendant's burden of showing prejudice under Rule 14, Fed.R.Crim.P. was not met prior to or during the trial. The fact that the jury was able to distinguish between the counts, finding defendant guilty of Counts 2 and 3 involving the Hommer conversion and mail frauds, and finding defendant not guilty as to Counts 4 through 8, involving the Watson conversion and mail frauds aided by forgeries, is strongly indicative that there was insufficient prejudice to have justified separate trials under Rule 14, Fed.R.Crim.P. Obviously, the evidence of guilt as to Counts 2 and 3 was not used by the jury to carry over or infer guilt as to Counts 4 through 8 upon which the defendant was found not guilty. *United States v. Hatcher*, 423 F.2d 1086 (5th Cir. 1970). See also, *United States v. Tillman*, 470 F.2d 142 (3rd Cir. 1972). The fact that 2½ years separated the Hommer conversion from the Watson conversion is insufficient in itself to show prejudice resulting from refusal to sever Counts 2 and 3 from Counts 4 through 8, *United States v. Hatcher, supra,* at 1089. Common to all counts was the defendant's alleged scheme to conceal the receipt of his clients' money, his conversion of those funds, and use of the mails as essential parts of the scheme. Cf. *United States v. Weber,* 437 F.2d 327 (3rd Cir. 1970).

### II

[2] Reason 3 complains of evidential rulings. The order of court in the Lipscomb case (GX38) was relevant to show the 1974 source of the funds from which the defendant, after 26 months paid the proceeds of the settlement to Mrs. Hommer and her husband, Jack Hommer. The defendant's disobedience of that order, as shown by Miss Arrigo's testimony, was evidence of his continuing intent to convert money of one client to pay another; it was also corroborative of the fact that he had converted to his own use the Hommer money which

---

2. Title 18 Pa.Stat.Ann. §§ 4824, 4834, 5014.

3. Rule 8 Fed.R.Crim.P. in part provides:
"(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character . . . ."

he had received in January, 1972, and deposited in another bank. See III *infra.*

■ The rulings on the admissibility of opinions of the handwriting expert which related solely to the alleged Watson conversion and forgeries, even if erroneous, would not warrant a new trial for the jury found the defendant not guilty of the 5 charges of mail fraud involving the Watsons, i. e., Counts 4 through 8.

### III

■ Reason 4 asserts error in submitting to the jury the question of a conversion of funds in the Hommer settlement. There was ample evidence that the defendant converted these funds.

Upon receipt of the two checks from the insurance company (GX30 and GX31) totalling $33,155.57, the defendant deposited them in his personal bank account in Western Pennsylvania National Bank on January 21, 1972. Immediately prior to this deposit the balance in his account was $1,793.98 (See January 25th bank statement, GX37). From January 21 through January 25, 1972, the defendant drew 16 checks on this account totalling $13,788.02 leaving a balance at the close of business on January 25, of $21,161.53. At most, the defendant was entitled to a 25% contingent fee[4] in the amount of $8,288.89 which would leave the amount due the Hommers of $24,866.68. Obviously, he converted part of their money.

Moreover, the defendant did not pay the Hommers their respective shares of the settlement until March, 1974, nearly 26 months later, when he secured cashiers checks payable to the Hommers in the total amount of $17,625 (GX40), from the First National Bank and Trust Company of Washington, Pennsylvania, which amount was converted from the

funds belonging to the Lipscomb Estate. See allegation in Indictment, paragraph 16, Counts 2 and 3.

Despite defendant's argument that there may have been outstanding expenses, none were proved. There was no valid explanation of the 26-month delay in paying to Beatrice Hommer the money to which she was entitled in January, 1972, which in itself is strong circumstantial evidence of conversion.[5]

The defendant was obligated to pay Mr. and Mrs. Hommer $24,866.68, the settlement money due to both, less his fee, in January, 1972. The fact that several months later the Hommers experienced marital difficulties prompting Mr. Hommer to tell his lawyer that he refused to "sign anything" does not justify the conversion. If the defendant had promptly sent a check payable to Beatrice Hommer and Jack Hommer, her husband, for the net proceeds of the settlement, which was his duty as their lawyer, a charge of conversion would have been forestalled. Instead he kept Mrs. Hommer's money, to her detriment, for almost 26 months before remitting the proceeds, without interest. The fact that he mailed two checks to her in the meantime, each in the sum of $2,500, apparently to hide the fact that he had long since received her money, constituted a part of the scheme to convert her funds and justified submitting the mail fraud charges to the jury.

### IV

Reasons 5, 6, 7, 8, 9, 10 and 11 are not worthy of extended consideration. Reasons 7 through 11 were neither briefed nor argued by the defendant.

There was ample evidence to warrant the verdicts of guilty upon Counts 2 and 3 (See III, *supra*).

The remarks of the Assistant United States Attorney were not objected to,

---

4. On cross-examination, Mrs. Hommer testified that according to her agreement with the defendant, he was to receive a fee of 25% if the case settled out of court.

5. *Commonwealth v. Spiegel*, 169 Pa.Super. 252, 82 A.2d 692 (1951).

and even if improper under the evidence, which is doubtful, they were not sufficiently prejudicial to justify a new trial.

█ The defendant's points for charge, handed to the court after the defendant's summation had been concluded [6] were untimely.[7] Rule 30 Fed.R.Crim.P. requires that points for charge be presented to the court at the close of the evidence and prior to arguments of counsel.

█ There was no testimony, argument, or accusation proffered by the prosecution that commingling funds was a crime. The oral request for an instruction that commingling was not a crime made after the charge was concluded (Tr. Vol. I p. 53) was untimely.[8] In any event, the request had no relevance to the case.

The court denied the defendant's motion for judgment of acquittal made at the conclusion of the Government's evidence (Tr. Vol. III p. 58); and denied the defendant's motion for judgment of acquittal made at the conclusion of all the evidence. (Tr. Vol. III p. 63).

█ It was not improper for the court at the conclusion of the charge to inquire whether anything was to be corrected. In response, defendant's counsel cryptically stated: "I think we should have some opportunity to discuss it . . ." The court inquired if he had any objection. Upon receiving an affirmative reply, the jury was excused and counsel proceeded to make his objections. (Tr.Vol. I p. 51). We think the 11th reason for a new trial is frivolous.[9]

An appropriate order will be entered.

---

6. The defendant's summation was concluded in the morning of October 23rd and his handwritten points for charge were filed at 1:50 p. m. o'clock just prior to the prosecutor's summation.

7. Cf. *United States v. Tourine*, 428 F.2d 865, 868–869 (2nd Cir. 1970) ; *Lewis v. United States*, 153 F.2d 724, 726 (8th Cir. 1946) ; Wright, Fed.Prac. & Procedure § 482, p. 276.

---

8. *United States v. Bailey*, 451 F.2d 181, 183 (3rd Cir. 1971) ; *United States v. Kahaner*, 317 F.2d 459, 477 (2nd Cir. 1963).

9. Rule 30, Fed.R.Crim.P. Cf. *Nolan v. Bailey*, 254 F.2d 638, 640 (7th Cir. 1958) and *Lambert v. Duzy*, 286 F.Supp. 670, 673 (E. D.Pa.1968) which interpreted Rule 51, Fed.R.Civ.P., a rule almost identical to Rule 30 Fed.R.Crim.P.