560 F.2d 601
 UNITED STATES of America, Appellant in Nos. 76-2511 & 76-2512,
v.
Daniel CAHALANE et al., Appellants in Nos. 76-2461 & 76-2565.
Appeal of Neil BYRNE et al., Appellants in Nos. 77-1173,
76-2473 & 76-2566.
 Nos. 76-2461, 76-2473, 76-2511, 76-2512, 76-2565, 76-2566
and 77-1173.
 United States Court of Appeals,
Third Circuit.
 Argued June 7, 1977.
Decided Aug. 11, 1977.
 
 Robert W. Merkle, Jr., Brandon Alvey, David H. Hopkins, Daniel E. Fromstein, U.S. Dept. of Justice, Washington, D.C., for the U.S., appellee in 76-2461, 76-2473, 76-25 65/66 and 77-1173, and as appellant in 76-25 11/12.
 Thomas Colas Carroll, Carroll, Creamer & Carroll, Philadelphia, Pa., for Daniel Cahalane, appellant in 76-2461, 76-2565, 77-1173, and as appellee in 76-2511.
 Jack J. Levine, Philadelphia, Pa., for Neil Byrne, appellant in 76-2473, 76-2566, 77-1173, and as appellee in 76-2512.
 Before WEIS, Circuit Judge, CLARK,* Associate Justice and GARTH, Circuit Judge.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 Although many issues are raised in these appeals, the principal contentions center on the sufficiency of the evidence. A jury returned verdicts against the defendants on charges of conspiracy and exporting arms and implements of war without a license. We conclude that the prosecution produced enough evidence to sustain the verdicts and the district court committed no reversible trial errors. Therefore, the judgment of sentence on the conspiracy count will be affirmed and the judgment of acquittal on the substantive counts will be vacated.
 A jury convicted defendants Neil Byrne and Daniel Cahalane of both conspiracy and aiding and abetting the exportation of arms and ammunition to Northern Ireland without a license, in violation of 22 U.S.C. § 1934.[1] After hearing argument on post trial motions, the district court entered judgment of acquittal on the substantive counts, denied motions for a new trial, dismissed the challenges to the conspiracy conviction, and sentenced the defendants on that count. The defendants have appealed from the judgment of sentence, and the Government has appealed from the entry of acquittal as to the substantive counts pursuant to 18 U.S.C. § 3731.[2] In the latter case, the defendants have cross-appealed, asking for a new trial in the event that the judgment of acquittal is vacated.
 
 
 1
 The evidence in this lengthy trial is discussed in detail in the district court's opinion, United States v. Byrne, 422 F.Supp. 147 (E.D.Pa.1976). We, therefore, will review the evidence in a more general fashion, taking it, as we must, in the light most favorable to the Government since the jury verdict was against the defendants. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Sica, 560 F.2d 149 (3d Cir. 1977); United States v. De Cavalcante, 440 F.2d 1264 (3d Cir. 1971).
 
 
 2
 Byrne, Cahalane and others in Pennsylvania and New York purchased Armalite semi-automatic, Lee-Enfield and Springfield rifles, M-1 carbines and armor piercing ammunition during the period 1970-1973. Some of these weapons were purchased packed in grease, a procedure appropriate for overseas shipment. The Armalite rifle is substantially the same as a U.S. Army M-16, capable of piercing flak vests and steel helmets at substantial distances. It also came equipped with a grenade launcher and a flash suppressor. The four named defendants (excluding Duffy) purchased about 360 weapons within one year at a cost exceeding $30,000 and over 100,000 rounds of ammunition. British authorities later seized approximately half of these weapons in Northern Ireland.
 
 
 3
 In addition to this activity in Eastern Pennsylvania, evidence established that Cahalane and Byrne worked with unindicted co-conspirators Martin Lyons and Francis Grady who lived in New York City. All four were officers of an organization known as the Irish Northern Aid Committee, NORAID, with Lyons acknowledged as a leader and the others having lesser roles. NORAID headquarters were located in the Bronx, where a local chapter functioned under Lyons' direction. NORAID engaged in various fundraising activities and was also the center of the armament purchase and transportation efforts. A former NORAID member testified about his work in picking up, crating and transporting weapons for the organization.
 
 
 4
 Byrne and Cahalane traveled to Lyons' New York City residence in November, 1972, and January, 1973. Telephone records disclosed numerous calls between Lyons and Byrne, Lyons and Cahalane, as well as to NORAID headquarters by both Byrne and Cahalane. Byrne also negotiated with a Government informant for the purchase of rifles, machine guns, armor piercing ammunition, rocket launchers and mortars. He told the informant that the arms would be shipped directly to Ireland from New York.
 
 
 5
 A government undercover agent testified that Lyons and others attempted to purchase anti-tank rockets, grenade launchers and automatic weapons. When the agent asked how he got them to Ireland, "he (Lyons) told me they crated it as plumbing stuff." Another NORAID member told a Government witness that Lyons had once disguised himself as a priest to get two trunks past customs and aboard a ship bound for Ireland. The Government also introduced evidence to show that neither Byrne, Cahalane nor Duffy had a license to export weapons.
 
 
 6
 The district court found sufficient evidence from which the Jury could reasonably find the existence of an agreement to export weapons without a license and the defendants' knowledge and participation in the conspiracy. The court, however, set aside the convictions on the substantive counts on the ground that the Government failed to show in what manner or by whom the specific guns described in the indictment were exported.
 
 I.
 THE CONSPIRACY COUNT
 
 7
 Stressing the legality and "openness" of their munitions purchases, defendants contend that the Government produced no evidence of intent to participate in a plan of unlawful exportation. After a careful review of the record, the district court summarized the Government's case as establishing the existence of a conspiracy to export guns and ammunition without a license lasting over several years and involving more than a dozen persons. The evidence showed patterns of overt, as well as clandestine, efforts to purchase weapons to be shipped to Northern Ireland for the use of the IRA. According to defendant Duffy, "the heat was on," and since "Scotland Yard is cooperating with the FBI," "they had to be very, very careful."[3]
 
 
 8
 The Government proved that the guns were purchased in this country and were traced to Northern Ireland. Exportation in fact occurred, and the circumstantial evidence was sufficient to allow the jury to find knowledge of an improper purpose, United States v. Klein, 515 F.2d 751 (3d Cir. 1975), and an agreement to accomplish that result by exporting without a license. We find no error in the district court's determination upholding the jury verdict.
 
 II.
 THE SUBSTANTIVE COUNTS
 
 9
 Conceding arguendo, in light of the verdict, the purchase of the arms and some manner of shipment to Ireland, the defendants contend that the Government failed to prove they aided and abetted an illegal exportation. The prosecution's case relied on circumstantial evidence and the inferences to be drawn from it. The issue, therefore, is whether the verdict was supported by inferences which could properly be drawn from the evidence. That the jurors understood the issue is revealed by a question they submitted to the trial judge during the course of deliberations:
 
 
 10
 "If an individual fully, aware that the weapons he is buying are ultimately going to end up in Northern Ireland, believes that the weapons will leave the United States in a legal manner is he guilty of a conspiracy to have the weapons leave the county illegally?"
 
 
 11
 Although the inquiry was directed to the conspiracy count, the jury obviously recognized the importance of the manner of exportation. The district judge found that "the Government failed to produce evidence sufficient for the jury to find beyond a reasonable doubt that the offense of exporting firearms without a license was committed by anyone." Hence, finding no proof of the underlying crime's commission, he ruled there could be no conviction for aiding and abetting.
 
 
 12
 We do not agree that evidence of illegal exportation was lacking. The prosecution's case, though far from overwhelming, was enough to require jury consideration. The record establishes without doubt the defendants' possession of the rifles and ammunition in this country and the confiscation in Northern Ireland. According to the Government's theory, Byrne and Cahalane worked with Lyons and others in New York in purchasing arms to be smuggled out of that city to Northern Ireland. Taking inferences from the testimony in favor of the Government, as we are required to do at this stage of the case, Glasser v. United States, supra, United States v. Sica, supra, the jury could find that Lyons, in fact, had smuggled arms aboard a ship bound for Ireland, sometimes packing them as plumbing supplies. Since Lyons engaged in such subterfuges, it would be a reasonable inference that he, like the other defendants, had no license to export. If the defendants and other members of their group had been able to ship the supplies through a licensed exporter, there would have been no necessity for them to work with Lyons and his organization, nor to fear the cooperation of the FBI and Scotland Yard. Nor would it have been necessary for them to transport bulky weapons by car, rather than having the arms store ship them to an exporter.
 
 
 13
 In United States v. Grady, 544 F.2d 598 (2d Cir. 1976), the defendant (an unindicted co-conspirator in the case sub judice ) was convicted of unlawful exportation under 22 U.S.C. § 1934 and 22 C.F.R. § 121-23 (1975). There, also, defendants contested the sufficiency of the evidence to prove the offense. The Court of Appeals for the Second Circuit affirmed the conviction, stating:
 
 
 14
 "As to the lack of evidence claim, the short answer is that the entire scheme of purchase from Jankowski indicated that it was a clandestine undertaking to export firearms to Northern Ireland; from this the jury could have inferred that those associated with it would not seek an export license or use the services of a registered exporter, since either procedure would have involved the recording of information as to the disposition of the weapons." 544 F.2d 598, 605 (2d Cir. 1976).
 
 
 15
 The court also recited evidence of the same event as in this case Lyons disguising himself as a priest to ship some arms to Ireland. The evidence in the case sub judice is at least as strong as that in Grady, if not more so. There is more than evidence of clandestine activities there are admissions from other NORAID members with whom defendants worked closely. United States v. Trowery, 542 F.2d 623 (3d Cir. 1976).[4] Granting that the case is close, nevertheless the Government produced sufficient evidence to have the matter submitted to the jury. Since the verdict had support in the record, the district court erred in granting an acquittal.
 
 III.
 ALLEGED AMENDMENT OF THE INDICTMENT
 
 16
 A month before trial, the Government wrote to the court, naming additional co-conspirators "among others, Eugene Marley, Martin Lyons, Francis Grady, Sean Keenan and Cornelius Buckley." The letter was inadvertently not sent to defense counsel, and they remained unaware of if until approximately ten days before the scheduled trial date of May 10, 1976. On May 5, the Government also submitted a list of twenty additional overt acts. Defendants, at a pretrial conference on that date, moved for a sixty day continuance, and after reviewing the matter, the trial judge granted a two week delay.
 
 
 17
 Defendants do not question the trial judge's action in limiting the time of the continuance, but rather contend that the additional overt acts amounted, in fact, to an amendment of the indictment. They allege that these overt acts, concerned with activities of Lyons and others in New York, added the New York activities to the Philadelphia operation described in the indictment. According to the defense, the Government sought to add evidence developed in its recently concluded Grady trial in New York.
 
 
 18
 The indictment charged that "the defendants would provide rifles and ammunition to persons to the Grand Jury unknown, to transport and export the aforesaid rifles and ammunition to the Irish Republican Army in Northern Ireland." The list of additional overt acts and co-conspirators supplied by the Government before trial was explanatory and descriptive rather than inconsistent or in addition to the charges in the indictment. The lists therefore do not constitute "amendments" to the indictment. See United States v. Goldstein, 502 F.2d 526 (3d Cir. 1974).
 
 
 19
 The details were not at variance with the grand jury's understanding of the crime but constituted additional evidence of the general charge. Since the defendants had adequate time to make further investigation, prejudice is absent. Indeed, from the record it appears that defense counsel was not unaware of what had transpired in the Grady trial. The trial judge properly ruled that there was no amendment to the indictment, and his action in granting a continuance prevented any prejudice to defendants. See United States v. Adamo, 534 F.2d 31, 38-39 (3d Cir. 1976), cert. denied, 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1977).
 
 IV.
 REPEALER
 
 20
 Defendants argue that the repeal of 22 U.S.C. § 1934 and substitution of 22 U.S.C. § 2778 abates the prosecution in this case. 22 U.S.C. § 1934 (§ 414 of the Mutual Security Act of 1954) was repealed in Pub.L. 94-329, Title II, § 212(b)(1), June 30, 1976, 90 Stat. 745. The repealer provides that a reference to § 414 shall be deemed to be a reference to § 38 of the Arms Export Control Act, 22 U.S.C. § 2778, and references to licenses issued under § 38 of the Arms Export Control Act shall include licenses under § 414. The repealer provides further.
 
 
 21
 "(2) All determinations, authorizations, regulations, orders, contracts, agreements, and other actions issued, undertaken, or entered into under section 414 of the Mutual Security Act of 1954 shall continue in full force and effect until modified, revoked, or superseded by appropriate authority."
 
 
 22
 Defendants contend that the preceding section does not include "prosecutions," and moreover, the instant cases were based on violations of the regulations, rather than the statute itself. We do not pass upon the Government's position that the regulations, rather than the statute, are controlling, although the regulations continued in effect. See Executive Order No. 11940, reprinted as a note to 50 U.S.C.App. § 2403. Moreover, there is evidence of congressional intent to continue limitation on arms exportation. See generally 1976 U.S.Code Cong. and Admin.News 1378. However, in our view the General Savings Clause, 1 U.S.C. § 109, governs this case:
 
 
 23
 "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution . . . ."
 
 
 24
 See Warden v. Marrero, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974). Here, the repealing statute does not express any intention to extinguish liability. To the contrary, it leads to the opposite conclusion. Accordingly, we reject the defendants' contention.
 
 V.
 TRIAL ERRORS
 
 25
 The defendants urge a number of trial rulings as reversible error:
 
 
 26
 1. The trial court erred in unduly restricting cross-examination of a prosecution witness, Nigro, and in declining to instruct the jury in evaluating his testimony.
 
 
 27
 Rule 608(b), Federal Rules of Evidence governs the scope of cross-examination, granting the trial court wide discretion in allowing testimony about actions of a witness affecting his character for untruthfulness. We find no abuse of that discretion. The instruction which defense counsel submitted to the trial judge was untimely. United States v. Tourine, 428 F.2d 865 (2d Cir. 1970), cert. denied, 400 U.S. 1020, 91 S.Ct. 581, 27 L.Ed.2d 631 (1971); United States v. Ashton, 399 F.Supp. 1192 (W.D.Pa.1974), aff'd, 521 F.2d 1399 (3d Cir. 1975), cert. denied,424 U.S. 942, 96 S.Ct. 1409, 47 L.Ed.2d 348 (1976). Moreover, the charge did caution the jury about the reliability of paid informer's testimony. Nigro's evidence obviously fell in that category.
 
 
 28
 2. The prosecutor's closing remarks were inflammatory.
 
 
 29
 The trial judge did not err in rejecting this contention. United States v. Homer, 545 F.2d 864, 867-868 (3d Cir. 1976).
 
 
 30
 3. The trial court improperly admitted the testimony of co-conspirators.
 
 
 31
 The district court relied upon United States v. Trowery, supra, and United States v. Trotter, 529 F.2d 806 (3d Cir. 1976). We find no error in the admission of the challenged statements.
 
 
 32
 4. The court erred in refusing to exclude the transcript of a telephone conversation recorded by the Government informant Nigro.
 
 
 33
 The court's ruling was within the discretion of the trial judge. We find no reversible error in admitting the transcript, despite the witness' earlier destruction of the magnetic tape.
 
 
 34
 5. Other evidentiary rulings cumulatively deprived the defendants of a fair trial.
 
 
 35
 Our review of the record does not substantiate this allegation and we find no error.
 
 
 36
 6. The presence of many rifles in the courtroom prejudiced defendants.
 
 
 37
 The guns were proper exhibits, and, in view of the nature of the case, could hardly be considered shocking or emotional. Moreover, it is well known that continued exposure to even emotion-arousing objects tends to reduce their effect. This was a lengthy trial, and the likelihood that the presence of the exhibits throughout it had any prejudicial effect is extremely speculative.
 
 
 38
 7. The court erred in refusing to marshall the evidence.
 
 
 39
 The defendants' complaint that the trial judge failed to marshall the evidence is somewhat unusual. A judge is free, if he chooses, to review the evidence providing he does so in a fair and impartial manner. United States v. Gaines, 450 F.2d 186 (3d Cir. 1971), cert. denied, 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 801 (1972); cf. Ayoub v. Spencer, 550 F.2d 164 (3d Cir. 1977). However, it is not obligatory that he review the testimony, and, in the opinion of many trial lawyers and judges, it is better left undone. Judge Learned Hand wrote:
 
 
 40
 "(I)n this country not only has the exercise of the power (to marshall the evidence) never been obligatory, but the power itself has been somewhat suspect. It is strange to hear an accused complaining of such a failure; we may be assured that, if the power had been used, the complaints would have been louder, and almost certainly better grounded." United States v. Cohen, 145 F.2d 82, 92-93 (2d Cir. 1944), cert. denied, 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed. 637 (1945).
 
 
 41
 As the district judge in this case remarked: "The marshalling of the evidence is what counsel had done in summation to the jury." Extensive comment on the evidence by the trial judge usually leads to complaints of mistake, undue emphasis on one phase or another, or subtle indication to the jury of the judge's view on guilt or innocence. We find no merit in this contention of the defendants.
 
 
 42
 8. The court erred in failing to charge on multiple conspiracies.
 
 
 43
 We agree with the trial judge that this was not error since there simply was no evidence of anything other than one large conspiracy.
 
 
 44
 In summary, we find no reversible trial error.VI.
 
 DEFENDANTS' CROSS-APPEALS
 
 45
 Finally, we must dispose of a somewhat complicated procedural matter. On October 12, 1976, the district court ruled on various post-trial motions as follows: "(I)t is hereby ORDERED and DECREED as follows:
 
 
 46
 1. The defendants' motion for arrest of judgment is DENIED;
 
 
 47
 2. The defendants' motion for judgment of acquittal on Counts 4, 5, 9, 11, 13, 15 and 16 is GRANTED;
 
 
 48
 3. The defendants' motion for judgment of acquittal on Count 1 is DENIED;
 
 
 49
 4. The defendants' motion for a new trial is DENIED;
 
 
 50
 5. The defendants' motion to inspect the grand jury minutes is DENIED."
 
 
 51
 The court sentenced defendants on the conspiracy count on October 27, 1976, and defendants appealed within the required ten days. Fed.R.App.P. 4. The Government, granted thirty days to appeal, did not file its appeal from the judgment of acquittal until November 10, 1976. On November 19, 1976, defendants filed a cross-appeal to the Government's case, and petitioned the district court for an extension of time because of "excusable neglect" under Fed.R.App.P. 4. The district court denied any extension of time, and defendants have also appealed this order.
 
 
 52
 Defendants argued that if we vacate the judgment of acquittal on the substantive counts, we should then proceed to review the district court's denial of their motion for a new trial[5] even though they have not been sentenced on the substantive charges. We conclude that we do not have jurisdiction to review their contentions. Defendants do not have the right to cross-appeal when the Government appeals under 18 U.S.C. § 3731, see United States v. Long, 534 F.2d 1097, 1101 (3d Cir. 1976); United States v. West, 453 F.2d 1351, 1353 n. 3 (3d Cir. 1972); see also United States v. Olt, 492 F.2d 910 (6th Cir. 1974); United States v. Halbert, 436 F.2d 1226 (9th Cir. 1970), and the order they seek to appeal is clearly interlocutory. Berman v. United States, 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204 (1937); United States v. Mathews, 462 F.2d 182 (3d Cir.), cert. denied, 409 U.S. 896, 93 S.Ct. 123, 34 L.Ed.2d 153 (1972); United States v. Rizzo, 439 F.2d 694 (3d Cir. 1971). Hence, the cross-appeals must be dismissed.
 
 
 53
 In the absence of a statutory right to appeal, the defendant's contentions can be considered by the reviewing court under the general rule that an appellee may rely on any ground in support of the judgment. United States v. Moody, 485 F.2d 531, 534 (3d Cir. 1973); see also United States v. Finn, 502 F.2d 938, 940 (7th Cir. 1974); United States v. Halbert,supra. This situation is not presented in the case sub judice : Defendants do not urge different grounds for affirming the judgment of acquittal, rather they seek reversal of the order denying a new trial. Nor may we review defendants' contentions under an analogy to the procedure employed in civil cases before the 1963 amendments to Fed.R.Civ.P. 50(c), see Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940); Zimmerman v. Mathews Trucking Corp., 205 F.2d 837 (8th Cir. 1953), for these are criminal, not civil appeals.
 
 
 54
 Moreover, there are practical reasons for refusing to address defendants' contentions at this time. First, the defendants may, after sentencing, decide not to appeal. Second, if the district court imposes concurrent sentences, review may be declined under the concurrent sentence doctrine. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943). If we were to find reversible error and order a new trial, that trial would have to proceed even if the district court had intended to impose concurrent sentences a result of no gain to defendants, but wasteful of both judicial and defendants' resources.
 
 
 55
 The judgment of the district court will be affirmed as to the conviction on the conspiracy count. The judgment of acquittal on the substantive counts: Counts 4, 5, 9, 11, 13, 15, and 16, will be vacated and the matter will be remanded to the district court for further proceedings. The cross-appeals of the defendants at Nos. 76-2565 and 76-2566 will be dismissed.
 
 
 
 *
 The Honorable Tom C. Clark, Associate Justice, Supreme Court of the United States (Retired), sitting by designation, heard the oral argument and participated in the decision in this case but died before the opinion was written
 
 
 [1]
 The trial court dismissed three counts and a portion of the conspiracy count. Two other defendants, Conlon and Regan, were fugitives. The jury acquitted Daniel Duffy, another co-defendant, of all charges
 
 
 [2]
 The trial judge granted the judgment of acquittal after the jury returned its guilty verdict. Therefore, a reversal of the judgment of acquittal would result in reinstating the jury's verdict without again placing the defendants in jeopardy. Since the Double Jeopardy Clause will not be violated, the government may maintain its appeal under 18 U.S.C. § 3731. United States v. Wilson, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). See also United States v. Martin Linen Supply Co., 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); United States v. Morrison, 429 U.S. 1, 97 S.Ct. 24, 50 L.Ed.2d 1 (1976); United States v. Davis, 560 F.2d 144 (3d Cir. 1977)
 
 
 [3]
 Though Duffy was acquitted by the jury, his admissions do not thereby become deleted from the record
 
 
 [4]
 Hearsay evidence admissible under the co-conspirator exception may, of course, be considered in the substantive counts as well. 4 J. Weinstein, Evidence P 801(d)(2)(E)(01). In United States v. Mendoza, 473 F.2d 692, 695 (5th Cir. 1972), the court said:
 "Nor is there any error in the court's refusal to exclude from the jury's consideration as to the substantive counts the evidence admitted under the co-conspirator exception in the hearsay rule. This exception is generally applicable to criminal prosecutions and not limited to prosecutions for conspiracy."
 
 
 [5]
 The district court's order does not clearly spell out whether its denial of defendants' motion for new trial applied only to the conspiracy count or to the substantive counts also. For purposes of this appeal, we assume the order applied to all counts