**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Guillermo RAMOS RODRIGUEZ,**
**Defendant–Appellant.**

**No. 90–8251.**

United States Court of Appeals,
Fifth Circuit.

March 1, 1991.

**419**

Oscar J. Pena, Jr., Laredo, Tex., for defendant-appellant.

LeRoy M. Jahn, Philip Police, Asst. U.S. Attys., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, JOHNSON and WIENER, Circuit Judges.

JOHNSON, Circuit Judge:

Defendant–Appellant Guillermo Ramos Rodriguez ("Ramos") was convicted by a jury of possession with intent to distribute more than one hundred kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1), and conspiracy to distribute more than one hundred kilograms of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1). Finding no reversible error, this Court affirms.

### I. FACTS AND PROCEDURAL HISTORY

On the night of November 13, 1989, United States Border Patrol agents John Sanwald ("Agent Sanwald") and Shawn McKeever ("Agent McKeever") set up surveillance in a brushy area adjacent to an irrigation canal running alongside the Rio Grande. The area, near Quemado, Texas, is notorious for smuggling operations. Agents Sanwald and McKeever observed a man climb the embankment of the canal and walk toward Highway 277, a road less than a mile away. The man later returned to the same spot and disappeared behind the embankment. Within two minutes, the same man again ascended the embankment, accompanied this time by five other men. Three of the men carried duffel bags and one man carried a tote bag. Agent Sanwald and Agent McKeever watched this group of six walk along the embankment towards Highway 277 until they faded from sight. Eventually, three of the men returned empty-handed to the brushy area and were last seen walking toward the Rio Grande.

Meanwhile, Agent Rick Campos ("Agent Campos") assumed a position near the Highway 277 bridge spanning the irrigation canal. Agent Campos observed a maroon and gray AMC Concord stop near the bridge. Shortly thereafter, three men appeared and loaded two bags into the rear seat of the Concord and two more bags into the trunk. The three men then retreated behind a fence near the roadway as the Concord headed northbound on Highway 277. Once advised of the direction of the Concord, other agents driving a marked car

420

located and attempted to stop the Concord. However, the driver of the Concord refused to stop the car and led the agents on a high speed chase which ended only when the Concord crashed into a fence. The driver, identified as Reymundo Perez–Garcia ("Perez–Garcia"), was arrested. Agents recovered from the Concord three duffel bags and a tote bag, altogether containing a total of 86 packages of marijuana weighing 227 pounds.

Meanwhile, after being notified of the loading of the Concord, Agents Sanwald and McKeever waited for the return of any of the suspects. Soon, three men approached the brushy area. When the agents announced that they were immigration officers, the three men fled. Agents were able to capture two of the men. One man was later identified as the defendant Ramos and the other as Jose Alfredo Munoz–Lopez ("Munoz–Lopez"). The third man escaped.

A grand jury indicted Ramos on two counts: possession with intent to distribute more than one hundred kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1), and conspiracy to distribute more than one hundred kilograms of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1). Ramos' two co-defendants, Perez–Garcia and Munoz–Lopez, were charged in the same indictment, but pleaded guilty prior to Ramos' trial.[1] A jury found Ramos guilty on both counts. The district court sentenced Ramos to concurrent terms of 97 months imprisonment, concurrent terms of four years supervised release and a $100 special assessment. Ramos now appeals his convictions.

## II. DISCUSSION

Ramos asserts three points of error. First, Ramos contends that the district court erred in allowing the Government to display a large amount of marijuana throughout the course of the trial. Second,

Ramos argues that the district court erred in admitting evidence of other crimes committed by a co-defendant who was not being tried with Ramos. Finally, Ramos challenges the sufficiency of the evidence to support his convictions.

### A. Display of Evidence

On the first day of trial, two packages of marijuana and a duffel bag were present on the Government's table in the courtroom. Ramos objected on the ground that the presence of the marijuana tended to inflame the minds of the jury. After the Government explained that its first witness would identify the two packages and the bag, the district court permitted the items to stay on the table. The next day, the Government brought into the courtroom all 227 pounds of marijuana. Ramos again objected, complaining that the jury was able to see and smell the narcotic. The district court summarily overruled Ramos' objection.

Ramos concedes that the marijuana was admissible evidence against him. Still, Ramos contends that the display violated Federal Rule of Evidence 403 and his constitutional due process rights. Rule 403 provides:

Although, relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The purpose of Rule 403, without question, is to authorize the *exclusion* of inflammatory or prejudicial evidence. Ramos does not argue, however, that the marijuana should have been excluded; rather, he argues that the jury should not have been allowed to see the narcotic throughout the trial. This Court can find no error under Rule 403.

1. Ramos, Munoz–Lopez, and Perez–Garcia were each charged with possession with intent to distribute more than one hundred kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1), and conspiracy to distribute more than one hun- dred kilograms of marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1). Perez–Garcia was also charged with impeding a United States Border Patrol agent in violation of 18 U.S.C. § 111.

■ Ramos next argues that the presence of the marijuana deprived him of a fair trial in violating his due process rights under the fifth and sixth amendments to the Constitution. The defendants in *United States v. Cahalane*, 560 F.2d 601, 607 (3d Cir.1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978), advanced a similar argument. The *Cahalane* defendants argued that the presence of a large number of rifles in the courtroom throughout the trial was highly prejudicial. The Third Circuit refused to accept such argument, noting that the rifles were proper exhibits. The Cahalane court recognized, moreover, that any prejudice from the presence of the rifles was merely speculative. "[I]t is well known that continued exposure to even emotion-arousing objects tends to reduce their effect." 560 F.2d at 607; *see also United States v. Adams*, 759 F.2d 1099, 1109 (3d Cir.1985) (quoting same).

Under the circumstances in the instant case, undue prejudice did not occur. The jury did not view the marijuana for any unreasonable length of time; the Government's case lasted a mere four hours. Further, Ramos has not shown that the Government acted in bad faith. The Government's first witness identified the duffel bag and the two packages of marijuana, the only items present in the courtroom on the first day of trial. On the second day, every Border Patrol agent who testified identified a portion of the marijuana. Consequently, the Government's use of the marijuana throughout its case provided a sufficient reason for the presence of the narcotic. At the same time, the instant availability of the marijuana was reasonably calculated to save time in the presentation of evidence. Thus, Ramos' complaint that the presence of the marijuana violated his constitutional rights lacks merit.

## B. *Evidence of Other Crimes*

■ Ramos argues that the district court erroneously admitted evidence concerning the high speed car chase and apprehension of co-defendant Perez–Garcia. In essence, Ramos contends that only evidence related to his two counts should have been admitted. Ramos does not cite any evidentiary rule to support his contention. Nonetheless, the applicable Federal Rules of Evidence are 402, 403 and 404(b). Rule 402 provides that evidence which is not relevant is inadmissible. Rule 403 states that evidence, even if relevant, may be inadmissible if its probative value is substantially outweighed by the dangers of unfair prejudice. Rule 404(b), placing a further restraint on relevant evidence, provides that evidence of other crimes is inadmissible if offered to show a person's character.

In the instant case, the car chase and apprehension of Perez–Garcia were part of the same sequence of events as the apprehension and arrest of Ramos and, therefore, were relevant to the conspiracy and possession charges. Any undue prejudice from the admission of evidence of the car chase and apprehension of Perez–Garcia was alleviated by the district court's instructions. The district court instructed the jury that Ramos was on trial only for conduct alleged in the indictment, that the jury was not to be concerned with the guilt of any other person, and that evidence pertaining to each person in each count of the indictment was to be considered separately. This Court recognizes that a jury is generally capable of properly applying evidence only against whom it is offered. While Perez–Garcia was not on trial with Ramos, there is no reason to assume that the jury would hold Ramos culpable for Perez–Garcia's conduct.

Similarly, Rule 404(b) does not preclude this evidence. The evidence concerning the car chase and Perez–Garcia's arrest was not admitted to show the character of either Ramos or Perez–Garcia. Instead, the evidence was offered solely for the purpose of proving there was a conspiracy involving the distribution of marijuana. No error is apparent.

## C. *Sufficiency of the Evidence*

■ The standard of review in deciding whether sufficient evidence exists to support a criminal conviction is whether any

rational trier of fact could have found the essential elements of the conviction beyond a reasonable doubt, viewing the evidence in a light most favorable to the prosecution. *United States v. Anchondo–Sandoval*, 910 F.2d 1234, 1236 (5th Cir.1990).

■ To sustain a conviction for a conspiracy to violate the narcotics laws, the Government must show that (1) a conspiracy existed, (2) the defendant knew of the conspiracy, and (3) the defendant voluntarily participated in the conspiracy. *United States v. Kaufman*, 858 F.2d 994, 999 (5th Cir.1988). To sustain a conviction for possession of a narcotic with intent to distribute, the Government must show that the defendant (1) knowingly (2) possessed with (3) intent to distribute. *United States v. Martinez–Mercado*, 888 F.2d 1484, 1491 (5th Cir.1989). The jury may infer from circumstantial evidence every element of these offenses. *See United States v. Morgan*, 835 F.2d 79, 82 (5th Cir.1987).

■ Perez–Garcia and Munoz–Lopez both admitted at trial that they were members of a conspiracy involving a shipment of marijuana. The Government offered a prior written statement by Munoz–Lopez in which Munoz–Lopez also implicated Ramos in the conspiracy. Agents Sanwald and McKeever positively identified Ramos as one of the group of six men walking together along the canal embankment toward Highway 277. Ramos was one of the men carrying a bag.

Agent Campos testified that he observed three subjects load four bags into a vehicle parked along Highway 277. Following a high speed chase, agents apprehended the vehicle and its driver, Perez–Garcia. A search of the vehicle produced three duffel bags and a tote bag, altogether containing a total of 227 pounds of marijuana. The bags retrieved from the vehicle, several agents testified, generated a strong and distinct odor of marijuana. Near the time that the vehicle was apprehended, three men, including Ramos, returned to the brushy area where Agents Sanwald and McKeever were waiting. When the agents verbally identified themselves, the three men fled on foot.

From all of this evidence, the jury reasonably could have inferred that Ramos was guilty of conspiracy and possession of marijuana with intent to distribute. Ramos' arguments to the contrary lack merit. Ramos first argues that the agents could not have seem him since it was nighttime and the agents were a distance of 120 feet away. The testimony indicates that the agents' view was aided by the light of a full moon and the use of binoculars. A jury could reasonably believe that the agents were able to identify Ramos. Ramos next argues that the testimony of his two co-defendants, Perez–Garcia and Munoz–Lopez, exculpated Ramos. The Government offered a prior inconsistent statement to impeach Munoz–Lopez. In any event, the jury was entitled to disbelieve the testimony of Perez–Garcia and Munoz–Lopez.

## III. CONCLUSION

The presence of a large amount of marijuana during the short trial was not so prejudicial that Ramos was denied a fair trial. The district court did not err in admitting evidence concerning the high speed chase which resulted in the apprehension of a co-defendant and the marijuana. Finally, the evidence was sufficient to support Ramos' convictions. Accordingly, Ramos' convictions are affirmed.

AFFIRMED.