IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 10, 2008

Charles R. Fulbruge III
Clerk

No. 03-50150

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

JASINDA WHITTINGTON; JOSE CRISTOBAL CARDONA; KELLY
CARDONA

Defendants-Appellants

Appeals from the United States District Court for the
Western District of Texas, Del Rio Division
USDC No. 2:01-CR-251-6

Before JONES, Chief Judge, and WIENER and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Jasinda Whittington and Jose Cardona appeal their convictions and sentences. Kelly Cardona appeals her convictions. We AFFIRM as to Jose Cardona and Kelly Cardona. We AFFIRM Whittington's conviction, but VACATE her sentence and REMAND for resentencing.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS AND PROCEEDINGS

On September 5, 2001, Whittington, Jose Cardona, Kelly Cardona, Lionel Serrano, Manuel Cerda, and Marina Hernandez Garcia were indicted for various drug charges. Whittington, Jose Cardona, and Kelly Cardona were charged with one count of conspiracy to possess with intent to distribute over 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), & 846. The Cardonas[1] were also charged with one count of conspiring to possess with intent to distribute less then 100 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), & 846, one count of possession with intent to distribute over 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B), and one count of possession with intent to distribute over 100 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1) &, 841(b)(1)(C). Whittington, Serrano, and the Cardonas were tried together on March 26, 2002.

During pretrial motions, Cardona's second court-appointed attorney withdrew and a third court-appointed attorney was provided. Cardona subsequently made a motion to represent himself which was granted. Cardona moved for access to a law library, and visitation and correspondence with family and friends. These motions were denied. Serrano filed a motion for severance pursuant to Federal Rules of Criminal Procedure 8 and 14.[2] On the day of trial, Whittington adopted the motions of her codefendants. The court denied the motions to sever.

A.    Cardona's Trial and Sentencing

At trial, the evidence against Cardona was as follows. Three witnesses, Fuentes, Benevides, and Guerra, who had been incarcerated with Cardona, testified pursuant to plea agreements. All three testified that Cardona was a

---

[1] Hereinafter, Jose Cardona will be referred to as "Cardona" and Kelly Cardona will be referred to as "Kelly Cardona." Both defendants together will be referred to as "the Cardonas."

[2] Serrano's conviction and sentencing are not at issue in this appeal.

member of the Mexican Mafia. They further testified that Cardona had told them details of his drug-trafficking and that Cardona also gave them names of other individuals involved in his trafficking. One testified that Cardona used the term "chickens" as code for drugs. Conversations between Cardona and his wife that were recorded while Cardona was incarcerated indicated that they used the term "chickens" regularly in discussing various transactions. A U.S. Customs agent who had been involved in the investigation testified that when the Cardonas differentiated between black and regular chickens in their discussions, the "ones in black" referred to heroin. He also testified to methods by which drug-trafficking organizations operated.

Cooperating codefendant Marina Garcia testified that she had been arrested in possession of heroin after Cardona had asked her to hold the drugs for him when they were pulled over by police. Del Rio Police officers testified to arresting Garcia and the Cardonas during April 2001. Garcia had heroin in her possession. Cardona was unlawfully carrying a weapon and Kelly Cardona had an outstanding warrant. When officers found heroin hidden in Garcia's pants, she began shouting, "He made me do it. . . . Joe." Testimony throughout trial indicated that Cardona was referred to as "Joe." The heroin seized from Garcia weighed 30.24 grams.

Cooperating codefendant Manuel Cerda testified that he was arrested while receiving a load of marijuana at a brown trailer that belonged to the Cardonas. He said he had been recruited by Serrano who told him that he received the shipments of marijuana for Cardona. Cerda testified that he was a low-ranking member of the Mexican Mafia, specifically that he was one of Cardona's "prospects" in the Mexican Mafia. Two Border Patrol agents testified about the April 2001 arrest of Cerda and Serrano receiving marijuana at the Cardona's trailer. The marijuana seized during the arrest weighed 259.08 pounds.

Three U.S. Border Patrol agents testified to an operation where they captured Cardona in the vicinity of several individuals bringing a load of marijuana into the United States from Mexico during January 1999. A U.S. Customs agent testified that he conducted a search of the Cardonas' trailer in February 2001 and found a shotgun.

At the close of the government's evidence, Cardona moved for a judgment of acquittal which was denied. He did not renew the motion at the close of all evidence. The jury convicted him on all counts. On October 9, 2002, Cardona moved to proceed pro se and for access to a law library to prepare for sentencing. He renewed his motion for visitation and correspondence with friends and family members. The court determined that Cardona was already representing himself and would not remove his standby counsel. His motions were denied. Cardona later moved to continue sentencing from December 16, 2002 because he received his presentence report late on December 9, 2002. His motion was granted and his sentencing continued. On December 16, 2002, Cardona filed objections to his presentence report, specifically the drug quantity, the four-point leader/organizer enhancement, the obstruction of justice enhancement, the use of a weapon enhancement, and the career offender enhancement.

Cardona raises eighteen issues on appeal.

B.    Kelly Cardona's Trial and Sentencing

The evidence against Kelly Cardona was as follows. All three witnesses who had been incarcerated with Cardona testified that he told them that Kelly Cardona was involved in operating his drug-trafficking organization. Cerda testified that he had seen Kelly Cardona present at the Cardonas' trailer when shipments of marijuana were being loaded. Garcia testified that Kelly Cardona was in the car when Jose Cardona asked her to conceal the heroin for him. Kelly Cardona later visited Garcia in custody and threatened to kill Garcia's children if she said anything against Kelly Cardona or others. Also, the tape-recorded

conversations showed her involvement in Cardona's drug-trafficking. During one conversation, Cardona told his wife to go see Garcia in custody. He also expressed his concern about Garcia testifying. Kelly Cardona was recorded acknowledging Cardona's statements about the couple continuing to make mistakes. A U.S. Customs agent testified that he arrested Juan Kinisky on August 9, 2001 for smuggling 225 pounds of marijuana in a vehicle that was registered to Kelly Cardona. Later testimony showed that Kelly Cardona reported the vehicle stolen two days later. When searching the Cardonas' trailer, agents found a small amount of marijuana which Kelly Cardona admitted was hers.

At the close of the government's evidence, Kelly Cardona moved for a judgment of acquittal which was denied. She did not renew the motion at the close of all evidence. The jury convicted Kelly Cardona on all counts. On August 20, 2003, she was sentenced to 120 months of imprisonment. She appeals the admission of hearsay statements in furtherance of the conspiracy, the admission of evidence regarding Cardona's membership in the Mexican Mafia, and the sufficiency of evidence of her convictions.

## C.    Whittington's Trial and Sentencing

The evidence against Whittington was as follows. Cerda testified that Whittington had been present when loading drug shipments. Benevides testified that Cardona told him that Whittington was involved in smuggling heroin into prison because she knew one of the guards. Guerra testified that Cardona told him he once gave control of his drug-trafficking to Whittington because Kelly Cardona was spending too much money. A U.S. Customs agent interviewed Whittington after searching the Cardonas' trailer. Whittington told him that she owned the shotgun found at the trailer, but had left it behind after subletting the trailer to the Cardonas. A member of the DEA's task force testified that during his investigation of an individual named Jerry Wade, a

license plate registered to Whittington was found on a vehicle carrying 101 kilograms of marijuana on February 21, 2001. Whittington did not own the vehicle. An analyst from U.S. Customs testified about a recorded conversation in Spanish between Cardona and a female, whom Whittington later admitted was her. During the conversation, Cardona discussed his concerns about an individual testifying against him.

At the close of the government's evidence, Whittington moved for a judgment of acquittal which was denied. She did not renew the motion at the close of all evidence.

The jury convicted Whittington of the one count with which she was charged. On December 16, 2002, Whittington's sentencing hearing was held. She was sentenced to 121 months of imprisonment. Whittington appeals the denial of her motion to sever, the district court's factual determination in the calculation of drug quantity for her Sentencing Guidelines, the constitutionality of her sentence under United States v. Booker, 543 U.S. 220 (2005), and raises an ineffective assistance of counsel claim on direct appeal.

## II. DISCUSSION

A.    Admission of Hearsay Statements

Kelly Cardona appeals the admission of statements implicating her that Cardona made to other inmates. Because Kelly Cardona concedes that she failed to object to the admission of the hearsay statements that she now raises on appeal, the admission is reviewed for plain error. United States v. Olano, 507 U.S. 725, 731–32 (1993); United States v. Cuellar, 478 F.3d 282, 294 (5th Cir. 2007) (en banc). "Under that standard, we do not correct an error raised for the first time on appeal unless there is (1) error, (2) that is plain, and (3) that affects substantial rights." Cuellar, 478 F.3d at 294 (citing Olano, 507 U.S. at 731–37). "If these factors are established, the decision to correct the forfeited error is within the court's sound discretion, which will not be exercised unless the error

seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (citing Olano, 507 U.S. at 736).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). A statement is not hearsay if it is made "by a coconspirator of a party during the course and in furtherance of the conspiracy." FED. R. EVID. 801(d)(2)(E). "[T]he 'in furtherance' requirement is not to be construed too strictly lest the purpose of the exception be defeated." United States v. Cornett, 195 F.3d 776, 782 (5th Cir. 1999). "This rule is not without its limits, however; a statement is not in furtherance of the conspiracy unless it advances the ultimate objects of the conspiracy." Id. "Efforts to conceal an ongoing conspiracy obviously can further the conspiracy by assuring that the conspirators will not be revealed and the conspiracy brought to an end." United States v. Phillips, 219 F.3d 404, 419 (5th Cir. 2000). "[S]tatements which are puffing or boasts, but which are used to obtain the confidence of the person toward whom the statement is directed, are properly considered to be statements in furtherance of the conspiracy." United States v. Johnson, 872 F.2d 612, 623 (5th Cir. 1989). This Court has held that "statements [made] in order to encourage loyalty and obedience among the conspirators [is] a purpose clearly in furtherance of the conspiracy." United States v. Flores, 63 F.3d 1342, 1377 (5th Cir. 1995). Situations "where the person acting as a connection informed his source of the identity of the ultimate purchaser" have also been held to be situations in furtherance of a conspiracy. United States v. Patton, 594 F.2d 444, 447 (5th Cir. 1979).

Kelly Cardona argues that Cardona's statements about her to Fuentes, Benevides, and Guerra, which were admitted at trial were not in furtherance of the conspiracy. Under the plain error standard, this Court cannot make that conclusion. Benevides testified that Cardona explained the details of the drug

7

charges against him because Cardona asked him for "legal advice" regarding his case. Cardona also asked Benevides to join in his drug-smuggling operation. Cardona's statements to Benevides were in furtherance of the conspiracy to conceal the conspiracy by obtaining legal advice from a drug trafficker. Cardona's statements were also intended to obtain Benevides's confidence to join him in the conspiracy. Guerra was a fellow member of the Mexican Mafia and Cardona's statements to him were in furtherance of the conspiracy to gain his confidence as a member of the same gang. Fuentes testified that he was the head of a drug-trafficking organization and knew of Cardona's membership in the Mexican Mafia. The district court did not clearly err in admitting those statements that could have been designed by Cardona to gain the confidence of a fellow head of a drug-trafficking organization.

Assuming for the purpose of argument that these statements were admitted in error, the error was not plain, clear, or obvious. See Olano, 507 U.S. at 734. "The purpose of the plain error rule is to enforce the requirement that parties object to errors at trial in a timely manner so as to provide the trial judge an opportunity to avoid or correct any error, and thus avoid the costs of reversal." United States v. Chaney, 662 F.2d 1148, 1151 n.4 (5th Cir. Unit B Dec. 1981). From the testimony in the record, it is not clear that Cardona's statements were not made in furtherance of the conspiracy.

In support of her claim, Kelly Cardona relies on United States v. El-Zoubi, where "[t]he statement in question was not made to a coconspirator [and] the record [did] not allow the inference that [the defendant] thought the conspiracy would be more likely to succeed if [the listener] knew of [the defendant's] intent to [commit the crime]." 993 F.2d 442, 446 (5th Cir. 1993). That case, however, is inapplicable. Fuentes was the leader of his own drug-trafficking organization, Benevides was asked to participate in Cardona's drug-trafficking, and Guerra was a fellow Mexican Mafia member. Substantial evidence existed in the record

to infer that Cardona's drug-trafficking business would be more likely to succeed and expand if these individuals knew of his operation.

B.    Sufficiency of the Evidence

The Cardonas each challenge the sufficiency of the evidence of their convictions. A review of the trial transcript and docket sheet indicates that both moved for a judgment of acquittal at the close of the government's case, but did not renew their motions at the close of all evidence.

> Where . . . the defendant moves for a judgment of acquittal at the close of the government's case, but fails to renew the motion at the close of all evidence, the court applies a stricter standard to a sufficiency of the evidence challenge. In such cases, the court reviews the evidence only to determine whether there has been a manifest miscarriage of justice, which occurs only when the record is devoid of evidence of guilt.

United States v. Salinas, 480 F.3d 750, 759 (5th Cir. 2007) (internal citations omitted).

"The elements of a drug conspiracy are: (1) the existence of an agreement to import or to possess with intent to distribute; (2) knowledge of the agreement; and (3) voluntary participation in the agreement." United States v. Rodriguez-Mireles, 896 F.2d 890, 892 (5th Cir. 1990).

> A possession conviction requires proof that a defendant had knowing possession of marijuana with the intent to distribute it. . . . Possession may be actual or constructive, and may be proved by circumstantial evidence. One who owns or exercises control over a motor vehicle in which contraband is concealed may be deemed to possess the contraband. Intent to distribute may be inferred from the possession of a large quantity of contraband.

United States v. Hernandez-Palacios, 838 F.2d 1346, 1349 (5th Cir. 1988). "Constructive possession is found if the defendant knowingly has ownership, dominion or control over the contraband itself or over the premises in which the contraband is concealed." United States v. Arnold, 467 F.3d 880, 883 (5th Cir. 2006) (internal quotations omitted).

Reviewing the evidence presented at trial under the strict standard of review, there was ample evidence to support the Cardonas' convictions on all four counts. As to Count 1 of the superseding indictment, the evidence indicated that there was an agreement between the Cardonas and others to possess marijuana with intent to distribute it. There was evidence that the Cardonas knew of the agreement and voluntarily participated in it. Besides the statements of Cardona to fellow inmates, Kelly Cardona's recorded conversations with Cardona while he was in prison that were played for the jury and her own testimony acknowledging these conversations indicated her knowledge and participation in the conspiracy. Furthermore, her involvement in reporting a vehicle stolen two days after it was seized when being was used to haul 255 pounds of marijuana was evidence of her conspiring to possess marijuana with the intent to distribute it.

The evidence against the Cardonas was sufficient to prove their guilt as to Count 3, the marijuana possession count. Serrano and Cerda were caught in the act of receiving 259 pounds of marijuana at a trailer that was the Cardonas' residence. Cerda testified that Kelly Cardona was present when other loads of marijuana were placed on a truck at the residence and he testified that Serrano told him that he received marijuana for Cardona. This Court cannot say that the record was devoid of evidence proving that the Cardonas had constructive possession over the marijuana with intent to distribute the large amount of marijuana delivered to their residence.

There was sufficient evidence to prove Counts 2 and 4. Garcia testified that Cardona had given her the thirty grams of heroin that was found in her possession when she and the Cardonas were in the same car. Cardona's statements about smuggling heroin into Leavenworth indicate that intent to distribute the heroin existed. Recorded conversations were played for the jury in which the Cardonas discussed the possibility of Garcia testifying against

Cardona and Cardona recommended that Kelly Cardona visit Garcia. Garcia testified that Kelly Cardona threatened to kill her children if Garcia implicated Kelly Cardona. Kelly Cardona's threats against Garcia and her conversations with her husband indicate their constructive possession of the heroin, an agreement to possess it with the intent to distribute it, and that both voluntarily participated in the agreement.

## C. Admission of Cardona's Membership in Mexican Mafia as Evidence Against Kelly Cardona

Kelly Cardona appeals the admission of evidence that her husband was a member of the Mexican Mafia. The record indicates that Kelly Cardona did not object to the admission of Cardona's membership in the Mexican Mafia or possible retaliation by Cardona against witnesses. Thus, the appropriate standard of review is plain error. Olano, 507 U.S. 725 at 731–32; Cuellar, 478 F.3d at 294.

"This Court has previously established and upheld the rule that a defendant's guilt may not be proven by showing that he is related to an 'unsavory' person." United States v. Parada-Talamantes, 32 F.3d 168, 170 (5th Cir. 1994) (quoting United States v. Singleterry, 646 F.2d 1014, 1018 (5th Cir. 1981)). However, in Parada-Talamantes, the defendant's relative was not a codefendant in the same trial. Id. at 169. Because Kelly Cardona and her husband were codefendants in the same trial, the admission of his Mexican Mafia membership for its relevancy or prejudice to Kelly Cardona would be reviewed under the Federal Rules of Evidence. "Evidence which is not relevant is not admissible." FED. R. EVID. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." FED. R. EVID. 403. This Court has held that undue prejudice toward one defendant from the admission of evidence that is relevant against a codefendant may be alleviated by a district court's instructions. United

States v. Ramos Rodriguez, 926 F.2d 418, 421 (5th Cir. 1991). Instructions that the defendant was "on trial only for conduct alleged in the indictment, that the jury was not to be concerned with the guilt of any other person, and that evidence pertaining to each person in each count of the indictment was to be considered separately" has been held as sufficient. Id.

The evidence of Cardona's membership in the Mexican Mafia was relevant. With regard to the possession of heroin count in the indictment, the government alleged that Cardona attempted to smuggle the drugs to incarcerated Mexican Mafia members. The witnesses' fear of retaliation against them was relevant to prove Cardona's membership in the organization and involvement in narcotics-trafficking.

Kelly Cardona does not challenge the jury instructions. The jury was instructed that the defendants were on trial for conduct alleged in the indictment, that they were not to be concerned with the guilt of others, and that they were to consider the evidence against each person in each count separately. "This Court recognizes that a jury is generally capable of properly applying evidence only against whom it is offered." Id.

Even if the admission of Cardona's Mexican Mafia membership were plain error as to Kelly Cardona, she has failed to show that her substantial rights were affected or that the admission "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Cuellar, 478 F.3d 282, 294 (5th Cir. 2007) (en banc) (citing United States v. Olano, 507 U.S. 725, 736 (1993)). As discussed above, there was sufficient evidence other than her husband's Mexican Mafia membership to prove that Kelly Cardona was guilty of the crimes charged, which is more than necessary to show that her substantial rights were not affected by the admission.

D.    Severance

Whittington appeals the denial of her motion to sever and Cardona appeals the denial of severance (although he made no motion to sever). Whittington adopted the motions of her codefendants, which included Serrano's motion to sever. The government did not object to Whittington's adoption of the motions, nor did the court refuse to permit the adoption, nor are there exceptional circumstances indicating the adoption materially misled the court or opposing counsel. In these circumstances, this Court has held that a defendant properly adopted the objection of a codefendant. United States v. Bernal, 814 F.2d 175, 182 (5th Cir. 1987). Because Whittington properly adopted her codefendant's motion to sever, we review the denial of the motion for abuse of discretion. United States v. Nguyen, 493 F.3d 613, 625 (5th Cir. 2007).

"If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." FED. R. CRIM. P. 14(a).

> As a general rule, defendants indicted together would hold a trial together. A district court should grant severance only if a defendant is able to show that there is serious risk that a joint trial would compromise a special trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

Nguyen, 493 F.3d at 625 (internal citations and quotations omitted). "To prevail, the defendant must show that: (1) the joint trial prejudiced him to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration." United States v. Peterson, 244 F.3d 385, 393 (5th Cir. 2001) (internal quotations omitted). "[W]e have held that a quantitative disparity in the evidence is clearly insufficient in itself to justify severance. . . . We have also

held that the mere presence of spillover effect does not ordinarily warrant severance." United States v. Pofahl, 990 F.2d 1456, 1483 (5th Cir. 1993) (internal citations and quotations omitted).

Whittington argues that she was prejudiced by the denial of her adopted motion to sever because of the disparity between evidence against her and her codefendants and because of the admission of evidence regarding the heroin conspiracy. The disparity in evidence between Whittington and her codefendants alone is insufficient to warrant severance, as is the spillover effect from the evidence of the heroin conspiracy. Although the disparity and spillover together may be enough to warrant severance, Whittington concedes that the jury was given proper instructions to consider the evidence against the defendants separately. As noted above, undue prejudice from the admission of evidence regarding a codefendant may be alleviated by proper jury instructions. United States v. Ramos Rodriguez, 926 F.2d 418, 421 (5th Cir. 1991).

Whittington also argues that she was clearly prejudiced by denial of her adopted motion to sever because there was insufficient evidence to convict her. The record indicates otherwise. Cerda testified that Whittington was present when marijuana was loaded onto a truck. She sublet the trailer to the Cardonas which was used to receive a shipment of marijuana. She purchased a shotgun and left it behind in the trailer where Cardona would have access to it, when, as a convicted felon, he would not normally have legal access to a weapon. Cardona's statement to fellow inmates that Whittington had taken over his drug operation was indicative of her involvement in a marijuana conspiracy. Also, the presence of a license plate registered to Whittington on a car that did not belong to her that was transporting marijuana indicates Whittington's involvement. The amount of evidence against Whittington, the limiting instructions given to the jury, and this Circuit's precedent indicate that she did not suffer prejudice

sufficient to outweigh the government's interest in economy of judicial administration.

Cardona, on the other hand, made no motion to sever, nor did he adopt the motions of his codefendants.[3] "We have held that where, as here, appellants have failed to show any cause for failing to move for severance prior to trial, we need not even address the merits of their argument. Alternatively, we have limited review to plain error in such circumstances." United States v. Mann, 161 F.3d 840, 862 (5th Cir. 1998) (internal citations omitted). Thus, his claim is reviewed for plain error.

Cardona was not unduly prejudiced by the district court's failure to grant a severance that he never requested. Reviewing for plain error, the record reveals no indication that his substantial rights were affected or that his trial with codefendants "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Cuellar, 478 F.3d 282, 294 (5th Cir. 2007) (en banc) (citing United States v. Olano, 507 U.S. 725, 736 (1993)). Considering that Cardona was charged in each count and was the alleged ringleader in each count, it is difficult to envision him suffering any prejudice. The joint trial for heroin and marijuana charges appears to be of minor prejudice that certainly does not outweigh the government's interest in economy of judicial administration.

E.    Improper Joinder

Cardona also challenges the joinder of the four counts of the indictment. "The indictment . . . may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a). "The indictment . . . may

---

[3] Cardona argues that misjoinder and denial of a motion to sever are the same issue. We will discuss the two separately.

15

charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." FED. R. CRIM. P. 8(b). "Improper joinder under Rule 8 is considered to be inherently prejudicial and thus is reviewable on appeal as a matter of law." United States v. Bright, 630 F.2d 804, 812 (5th Cir. 1980). "Although a claim of misjoinder under Rule 8(a) is completely reviewable on appeal as a legal question, the rule is to be construed broadly in favor of initial joinder." United States v. Chagra, 754 F.2d 1186, 1188 (5th Cir. 1985). "Generally, the propriety of joinder under Rule 8 is to be judged from the allegations of the indictment, which for these purposes are assumed to be true." Id.

Cardona was charged in each count of the superseding indictment with each of the defendants. He has no claim of misjoinder under Rule 8(b). His reliance on cases interpreting joinder of defendants is misplaced. As to his claim under Rule 8(a), Cardona argues that the heroin and marijuana conspiracies occurred at different times, in different locations, and involved different drugs and different participants. Cardona's factual assertions are inaccurate, except that the charges involve different drugs. All four counts involved two common participants: Cardona and his wife. Counts Two, Three, and Four all occurred within a four-day time period that was within the same time period as Count One. All occurred within the same geographic area. The initial joinder of the four counts was proper.

F.    Ineffective Assistance of Counsel

On direct appeal, Cardona claims that he received ineffective assistance of counsel. "We do not entertain ineffective assistance of counsel claims on direct appeal when they have not been raised before the trial court, as the trial court is the proper place to develop the record necessary for their resolution." United States v. Palmer, 122 F.3d 215, 221 (5th Cir. 1997). "[T]he exception to our

general rule of non-review is typically satisfied only where the actual claim was raised and developed in a post-trial motion to the district court." United States v. Stevens, 487 F.3d 232, 245 (5th Cir. 2007). Cardona did not raise his ineffective assistance of counsel claim in the district court. There is no record available to review Cardona's counsel's decisions, particularly no affidavits from his counsel. Therefore, Cardona's claim will not be reviewed on direct appeal.

G.    Sentencing Factors

Whittington challenges the district court's calculation of drug quantity in determining her offense level for sentencing. She did not file a written challenge to her presentence report ("PSR"), but Whittington personally, not her attorney, objected to the drug quantity at her sentencing hearing. Thus, she properly objected to the PSR's calculated drug quantity. Cardona appeals the district court's calculation of his criminal history category and the application of the leader/organizer, obstruction of justice, and dangerous weapon enhancements to his offense level. Cardona properly objected to his PSR. "We review the district court's application and interpretation of the sentencing guidelines de novo. We review the district court's factual findings at the sentencing hearing for clear error." United States v. Gallardo-Trapero, 185 F.3d 307, 323 (5th Cir. 1999) (internal citations omitted). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." United States v. Valencia, 44 F.3d 269, 272 (5th Cir. 1995).

1.    Drug quantity

> When determining the base offense level of a co-conspirator, the Sentencing Guidelines' 'reasonable foreseeability' requirement necessitates a consideration of when the co-conspirator joined the conspiracy, what drug quantities were within the scope of the conspiratorial agreement, and of those drug quantities, the quantities that were reasonably foreseeable, prospectively only, by the defendant.

United States v. Turner, 319 F.3d 716, 724 (5th Cir. 2003). "The base offense level of a co-conspirator at sentencing should reflect only the quantity of drugs he reasonably foresees it is the object of the conspiracy to distribute after he joins the conspiracy." Id. (internal quotations omitted).

Evidence at trial proved that Whittington became involved in the conspiracy as early as February 2001, when the Cardonas sublet the brown trailer from her and when a license plate registered to her was found on a car carrying marijuana. Whittington was held responsible for a total of 1062 kilograms of marijuana. Of that amount, 570 kilograms were from the following sources: 102 kilograms seized in the Jerry Wade investigation, which was the marijuana found in a car with her license plate; 117 kilograms seized at the brown trailer during April 2001 when Serrano and Cerda were arrested; 103 kilograms seized during August 2001 as part of the investigation into Juan Kinisky; and 148 kilograms of marijuana seized in the Abelardo Rodriguez investigation on September 23, 2001.[4]

However, Whittington was also held responsible for the 592 kilograms of marijuana smuggled by Rodriguez in four loads before his September 23, 2001 arrest. The district court's finding that Rodriguez's trafficking was reasonably foreseeable was plausible in light of the record as a whole, as was the district court's calculation that those four loads weighed approximately 592 kilograms. The district court's factual findings holding Whittington responsible for Rodriguez's trafficking and for the calculation of the 592 kilograms were not clearly erroneous. However, without additional information from the record that Whittington entered the conspiracy earlier or that the four loads occurred after February 2001, it was not plausible for the district court to find Whittington

---

[4] Rodriguez, who had the alias "Lalo," was proven to be associated with the Cardona marijuana trafficking at trial and his trafficking would be reasonably foreseeable to occur even after Whittington's indictment.

responsible for those additional 592 kilograms smuggled by Rodriguez. Therefore, Whittington's sentence is vacated and remanded for resentencing.

Because Whittington's sentence has been vacated and remanded and her ineffective assistance of counsel claim pertains only to sentencing, her claim of ineffective assistance of counsel is moot.

2.    Career offender/criminal history category

Cardona challenges the district court's calculation of his criminal history category. "Section [4A1.2(e)] establishes the time period within which prior sentences are counted. As used in [§4A1.2(e)], the term 'commencement of the instant offense' includes any relevant conduct." U.S.S.G. § 4A1.2 cmt. n.7.

What Cardona refers to as his career offender enhancement is really his criminal history category. (His PSR indicates the career offender enhancement was not applied to him because his base offense level was higher than the offense level from the career offender table.) He argues that the indictment alleging his conduct in January 1999 was improperly contrived to allow his 1984 sentence for burglary of a habitation to be included in his criminal history category. He also argues that the heroin conspiracy did not commence until 2001 and his 1984 sentence should not be applied in computing his criminal history category for computation of his Sentencing Guidelines as to the heroin charges.

Whether Cardona's involvement in marijuana-trafficking in 1999 was properly included in the indictment is immaterial. The district court's finding that the January 1999 arrest by Border Patrol agents was relevant to both the marijuana and heroin charges of which Cardona was convicted was plausible in light of the record as a whole. The district court's interpretation of the Guidelines that Cardona's 1984 sentence for burglary of a habitation was within fifteen years of the commencement of the instant offenses was correct.

3.    Leader/organizer enhancement

Cardona appeals the district court's application of the four-point leader/organizer enhancement to his offense level. "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." U.S.S.G. § 3B1.1(a). In deciding whether a defendant undertook an organizational or leadership role, a court should consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4. "At sentencing, the court . . . must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary . . . ." FED. R. CRIM. P. 32(i)(3)(B).

Cardona argues that the district court did not rule on the dispute over his role as an organizer or leader. He also argues that he was not an organizer or leader and that the criminal activity did not involve five or more participants or was otherwise extensive.

The transcript of Cardona's sentencing hearing indicates the district court specifically found that the testimony regarding Cardona's leader/organizer role was believable. The evidence offered at trial including Cardona's statements, his tape-recorded conversations with his wife and Whittington, and Garcia's and Cerda's testimony all indicated that Cardona was the leader of his drug-trafficking organization. The same evidence proved that five or more individuals were involved in Cardona's organization. Therefore, the district court did not err in applying the four-point leader/organizer enhancement to Cardona's offense level.

4.   Obstruction of justice enhancement

Cardona appeals the district court's application of the obstruction of justice enhancement to his offense level.  He argues that there was no basis for the district court to conclude that he had obstructed the administration of justice.

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.

Garcia testified that Cardona's wife threatened her children, arguably at the direction of Cardona based upon the tape-recorded conversations admitted at trial.  Cardona even instructed his wife to visit Garcia.  The district court did not clearly err in finding that Cardona obstructed justice.

5.   Dangerous weapon enhancement

Cardona challenges the district court's application of the dangerous weapon enhancement to his offense level.  He argues the government failed to prove that the weapon was present during any drug-trafficking activity, because, he claims, there was no such activity before April 20, 2001.  "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S.S.G. § 2D1.1(b)(1).

> The Government has the burden of proof under §2D1.1 of showing by a preponderance of the evidence that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant.  Under this standard, the Government must show that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred.

United States v. Salado, 339 F.3d 285, 293–94 (5th Cir. 2003) (internal citations omitted).

The government proved that Cardona was involved in a drug-trafficking conspiracy beginning in January 1999. The government also proved that Cardona used the brown trailer as a location to receive drugs from Mexico. Although the weapon was found in the brown trailer before the April 20, 2001 load, the district court did not clearly err in finding that the weapon was present in the trailer while drug transactions occurred there, particularly considering the testimony of witnesses that the trailer was used for trafficking.

H.    Booker Error[5]

In order to preserve error under United States v. Booker, 543 U.S. 220 (2005), for a pre-Booker sentence, an objection "should be couched in terms that facts used to enhance the sentence were not proven to a jury beyond a reasonable doubt." United States v. Rodarte-Vasquez, 488 F.3d 316, 320 (5th Cir. 2007). Cardona made no such objection. Thus, his claim of Booker error for his pre-Booker sentences is reviewed for plain error. Id. at 321.

> In Booker, the Court followed its rationale in Blakely and concluded that when the sentencing judge bound by mandatory Guidelines increased the sentencing range under the Guidelines based on facts not found by the jury or admitted by the defendant, the sentence violated defendant Booker's Sixth Amendment right to a jury trial.

United States v. Mares, 402 F.3d 511, 518 (5th Cir. 2005) (citing Blakely v. Washington, 542 U.S. 296, 298–306 (2004); Booker, 543 U.S. at 228–29). Cardona argues that the district court similarly erred because its factual findings in determining his Sentencing Guidelines range, including the career offender enhancement, were not authorized by a jury verdict.[6]

---

[5] Because Whittington's sentence is vacated and remanded for resentencing, there is no need to address her claim of Booker error here.

[6] Although he cites Blakely v. Washington, 542 U.S. 296 (2004), in his pro se brief, Cardona's argument is properly made under Booker and we analyze the issue accordingly.

22

We find plain error when: (1) there was an error; (2) the error was clear and obvious; and (3) the error affected the defendant's substantial rights. United States v. Olano, 507 U.S. 725, 732–37 (1993). Cardona satisfies "the first two prongs of the plain-error test because the district court committed Sixth Amendment Booker error and because that error is now plain after Booker." United States v. Infante, 404 F.3d 376, 394 (5th Cir. 2005). To satisfy the third prong of the plain-error test, Cardona must show "with a probability sufficient to undermine confidence in the outcome, that if the judge had sentenced him under an advisory sentencing regime rather than a mandatory one, he would have received a lesser sentence." Id. at 395.

Even after Booker, "[t]he sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence." United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005). Thus, the district court's findings regarding Cardona's sentence, including findings of prior convictions for his criminal history category computation, were not in error.

Before this Court will vacate his sentence after Booker under a plain-error standard of review, Cardona must show that the plain error affected his substantial rights. Cardona's Sentencing Guidelines calculation recommended a range of 360 months to life imprisonment. The district court sentenced him to 480 months. Cardona's sentence, which was ten years over the lower limit of his Guidelines range, indicates that he would have received the same sentence under an advisory sentencing regime. He has failed to show that he would have received a lesser sentence under an advisory sentencing regime. Therefore, the district court's error did not affect his substantial rights and this Court will not vacate his sentence.

I.     Law Library Access

Cardona claims the district court erred in failing to provide him access to a law library and visitation and correspondence with friends and family. "[H]aving rejected the assistance of court-appointed counsel, [a defendant] ha[s] no constitutional right to access a law library in preparing the pro se defense of his criminal trial." Degrate v. Godwin, 84 F.3d 768, 769 (5th Cir. 1996) (per curiam). Cardona claims that his right to represent himself at trial was denied by the district court and he was then prejudiced because communication with his family and friends was restricted and he had no law library access. The record indicates that Cardona chose to represent himself after the appointment of his third court-appointed counsel. Cardona moved for access to a law library and visitation and personal correspondence which was denied after a hearing.[7] At the hearing, Cardona's third attorney, who acted as standby counsel, agreed to assist him with legal materials. Soon thereafter, Cardona moved to cease representing himself. His standby counsel was appointed to represent him and represented him through trial. After trial, Cardona rejected his court-appointed counsel again and represented himself at his sentencing hearing.

There is no indication that Cardona was denied the right to represent himself. He made his own motion to be represented at trial. During the period when he did represent himself, both before trial and after, having fired his court-appointed attorney, he had no right to law library access. Cardona's argument that Degrate is not the law because it is a per curiam decision is meritless and his case is not distinguishable from Degrate. Having rejected the assistance of court-appointed attorneys, neither Degrate nor Cardona had a right to access a law library. Cardona's ability to visit with friends and family is not material to his conviction, particularly because he was either represented by counsel or had standby counsel who had the ability to communicate with potential witnesses for

---

[7] The court found that there was not a full law library where Cardona was incarcerated, nor was there a facility with a full law library to which Cardona could be moved.

him. Therefore, the district court did not err in denying Cardona's pretrial motions for access to a law library and visitation and correspondence with family and friends.

J.  Continuance for Sentencing Hearing

Cardona appeals the denial of a second continuance for his sentencing hearing. He also claims that he was wrongfully denied access to a law library for that hearing. "To prevail on this appeal, he must demonstrate that the district [court] abused its discretion and that he suffered prejudice." United States v. Peden, 891 F.2d 514, 519 (5th Cir. 1989) (internal citations omitted). After his conviction, Cardona moved, on October 9, 2002, to proceed pro se and have access to a law library. After a hearing by a magistrate judge, the district court adopted the magistrate's recommendations and allowed Cardona to proceed pro se, but denied him access to a law library. He was provided a copy of his PSR on December 9, 2002 and his sentencing hearing was scheduled for December 16, 2002. Cardona filed objections to his PSR and moved for a continuance. His motion for a continuance was granted and his sentencing was continued to February 21, 2003. Cardona moved for a second continuance at the hearing, citing his lack of access to a law library and his desire to subpoena the state chemist who had weighed the drugs admitted against Cardona at trial, but the district court denied his motion.

There is no indication that the district court abused its discretion when it denied Cardona's second motion to continue. The district court had already accepted that the PSR was not timely provided to Cardona and continued the hearing. He suffered no prejudice because he had ample time to review the PSR and consult with standby counsel appointed to assist him. The chemist he requested to subpoena had already testified at trial. As discussed above, Cardona had no right to access a law library after firing his court-appointed attorney.

## K.     Various Evidentiary Issues

Cardona appeals the admission of evidence of his membership in the Mexican Mafia, a U.S. Customs agent's lay opinion testimony as improper expert testimony, testimony regarding an informant's tip, and hearsay of codefendant Serrano.  This Court "review[s] a district court's evidentiary rulings for abuse of discretion" subject to harmless-error analysis. United States v. Cantu, 167 F.3d 198, 203 (5th Cir. 1999).  "[F]or any of the evidentiary rulings to be reversible error, the admission of the evidence in question must have substantially prejudiced [the defendant's] rights." United States v. Sanders, 343 F.3d 511, 519 (5th Cir. 2003).

## 1.     Mexican Mafia membership

"Evidence of other acts is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or other acts were necessary preliminaries to the crime charged." United States v. Miranda, 248 F.3d 434, 440 (5th Cir. 2001) (internal quotations omitted).

Cardona objected to the admission of some of the testimony regarding his membership in the Mexican Mafia.  He claims that the evidence of his membership in the Mexican Mafia was improperly admitted under Federal Rule of Evidence 404(b).  However, evidence of his Mexican Mafia membership was inextricably intertwined with the two drug conspiracies with which he was charged.  The government alleged that the heroin was to be smuggled to incarcerated Mexican Mafia members. A cooperating codefendant caught trafficking in marijuana as part of the marijuana conspiracy and possession charges was a member of the Mexican Mafia.  Cardona's membership and high rank in the gang was a necessary prerequisite to prove his involvement as the leader of a large narcotics-trafficking organization.  Therefore, the district court

did not abuse its discretion in admitting evidence of Cardona's membership in the Mexican Mafia.

2.    Agent testimony

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.

> [An investigator's] extensive participation in the investigation of [a] conspiracy, including surveillance, undercover purchases of drugs, debriefings of cooperating witnesses familiar with the drug negotiations of the defendants, and the monitoring and translating of intercepted telephone conversations, allow[] him to form opinions concerning the meaning of certain code words used in [a] drug ring based on his personal perceptions.

Miranda, 248 F.3d at 441.  An agent with such participation in an investigation may testify to those opinions under Rule 701. Id.

Cardona objected to the admission of some of the testimony of U.S. Customs Senior Special Agent McCarthy.  He claims the testimony was improperly admitted expert testimony. McCarthy participated extensively in the Cardona investigation, including interviewing the defendants on various occasions and reviewing and correcting the transcriptions of Cardona's tape-recorded conversations.  Under Miranda, the district court did not abuse its discretion in admitting McCarthy's lay opinions regarding the conspiracy based upon his personal perceptions.

However, a review of the record supports our holding that McCarthy's testimony regarding drug-trafficking methods in general was improperly admitted expert testimony.  "The rule is well-established that an experienced narcotics agent may testify about the significance of certain conduct or methods

27

of operation unique to the drug distribution business." United States v. Washington, 44 F.3d 1271, 1283 (5th Cir. 1995). While McCarthy's experience may have qualified him as an expert, the district court did not qualify him as one at Cardona's trial. He testified about drug traffickers' use of cellular telephones, vehicles, and cash that went beyond the proper scope of his lay opinion testimony. Although the district court abused its discretion in admitting McCarthy's testimony regarding the use of those items by drug distribution businesses in general without qualifying him as an expert, the error was harmless. The testimony was of minimal assistance in the government's case compared to the direct evidence against Cardona, particularly his statements to fellow inmates, the testimony of codefendants, and taped conversations with his wife. The portions of McCarthy's testimony that were improperly admitted did not substantially prejudice Cardona's rights.

3.    Informant's tip

Cardona argues that the trial court erred when it allowed, over his objection, a reference to an informant's tip from Del Rio Police Detective Steve Hughs which was elicited by Cardona's counsel on cross-examination. The testimony was as follows:

> Q:    Agent, there's no serial number on this marijuana, is there?
> A:    No, sir, just a lab number.
> Q:    No. I mean, when you guys get it, it doesn't have like property of so and so?
> A:    A number is issued to it.
> Q:    You're not following my question, sir. Does it say "property of Jose Cardona" on any of that marijuana?
> A:    No, sir. No, sir, does not. [sic]
> Q:    So, you have no evidence whatsoever as to whether or not this is in any way connected to Mr. Cardona?
> A:    Just from the information we had from the initial informants.

Cardona claims this evidence was improper hearsay and violated his Sixth Amendment confrontation rights.

28

This Court reviews de novo a timely Confrontation Clause objection, subject to harmless-error analysis. United States v. Acosta, 475 F.3d 677, 680 (5th Cir. 2007). In Crawford v. Washington, the Supreme Court held that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the [Sixth Amendment] actually prescribes: confrontation." 541 U.S. 36, 68–69 (2004). Even if the admission of the testimony regarding an informant's tip were a violation of Crawford, the error was invited. "If a defendant injects otherwise inadmissible evidence, the defense cannot later object to such invited error." Acosta, 475 F.3d at 683 (internal quotations omitted). This Court has held that cross-examination that impeached a witness's credibility opened the door for the government to introduce testimony that otherwise violated Crawford to rebut the defendant's "insinuations." Id. at 684–85. Detective Hughs's testimony was not admitted by the government on direct or redirect, but rather on cross-examination. Cardona's own counsel repeatedly asked questions implying that the detective had no knowledge of Cardona's interest in the marijuana. When accusing the detective of having no information of Cardona's connection to the marijuana, Cardona invited the witness to provide testimony regarding the informant's tip. Because Cardona invited the error, he cannot complain of its admission on appeal.

4.    Serrano hearsay

Cardona claims the district court erred by admitting cooperating codefendant Cerda's testimony that codefendant Serrano told him that he received marijuana for Cardona. He claims this was inadmissible hearsay and a violation of his Sixth Amendment confrontation rights.

In Crawford, the Supreme Court held that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. at 68.

The Supreme Court declined to define "testimonial," but it determined that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. There is no basis to conclude that Serrano's statements to Cerda were in any way testimonial. Therefore, Cardona's Sixth Amendment rights are not at issue.

"The hearsay exception for statements against interest applies only where (1) the declarant is unavailable; (2) the statement tends to subject the defendant to criminal liability, such that a reasonable person in his position would not have made the statement unless he believed it to be true; and (3) the statement is corroborated by circumstances clearly indicating its trustworthiness." United States v. Dixon, 413 F.3d 520, 525 (5th Cir. 2005). Cardona objected when Cerda was first asked for whom Serrano was working. The admission of the testimony that Serrano received marijuana for Cardona is therefore reviewed for abuse of discretion.

Serrano was a codefendant and unavailable to testify, given the incriminating nature of his statement that he received shipments of marijuana for Cardona. The circumstances during which the statement was made clearly indicated its trustworthiness. Serrano had recruited Cerda to assist him in receiving shipments of marijuana at Cardona's trailer. Under those circumstances, this Court cannot hold that the district court abused its discretion in admitting the statements.

L. Jury Instructions

Cardona claims the district erred in failing to provide the accomplice jury instruction with regard to four witnesses against him: Benevides, Fuentes, Guerra, and Sparkman. All four had been in custody with Cardona, but none were his accomplices. The record indicates the district court gave Fifth Circuit Pattern Jury Instruction 1.08 regarding the credibility of witnesses and Instruction 1.15 regarding codefendant accomplices who have entered a plea

agreement. There is no indication that the district court failed to provide the proper instructions as Cardona claims.

M.     Improper Prosecutorial Remark

Cardona argues that he was denied a fair trial when the prosecutor was allowed to refer to him as "the devil." When a defendant fails to make a contemporaneous objection to a prosecutor's alleged improper remark, this Court reviews any such remark for plain error. United States v. Mares, 402 F.3d 511, 515 (5th Cir. 2005).

When reviewing a claim of an improper prosecutorial remark, this Court first asks whether the prosecutor made an improper remark and then asks whether the remark affected the substantive rights of the defendant. United States v. Munoz, 150 F.3d 401, 414–15 (5th Cir. 1998). To determine whether the remark affected substantive rights, this Court looks at "(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt." Id. at 415 (internal quotation omitted).

During opening statements, the prosecutor told the jury that it would hear what some witnesses would expect the government to do in return for their truthful testimony. The prosecutor concluded: "Throughout the trial you won't hear the United States apologizing for having to make those deals with the sinners who are paying their penance so that we can convict the person that we believe to be the devil here today." There was no objection. During its rebuttal at closing arguments, the prosecutor stated:

> When I began this trial, I told you I wouldn't make any apologies for making the deals with the sinners that I made on behalf of the United States to convict that man, the devil. And I'm not going to start now. They're bad people. And I certainly wouldn't want to invite them home to your houses, just like [defense counsel] wouldn't want to invite them home to his. They'll be in jail for a while.

31

There was no objection.

The prosecutor's remarks cannot be characterized as simply a colloquialism because he appeared to be referring to Cardona in each statement. We assume without deciding that referring to a defendant as "the devil" is improper. Under the high burden of plain error, however, we hold that such references did not affect Cardona's substantial rights. Although such a statement, made during Easter week, as Cardona notes, would negatively impact the jury, the specific wording of the statement was designed to explain the plea agreements that the government made with unsavory characters that testified against Cardona. The statements were minimized by the context in which they were made and would be of little prejudice. Although no cautionary instructions were given, Cardona did not object to the remarks. Most importantly, the analysis of the sufficiency of the evidence of Cardona's convictions under the same plain-error standard of review indicates that Cardona's substantial rights were not affected by the prosecutor's remarks.

N.    Giglio/Brady

Cardona claims that he was not provided information regarding Garcia's indictment for a separate drug charge in violation of Giglio v. United States, 405 U.S. 150 (1972) and Brady v. Maryland, 373 U.S. 83 (1963). However, this claim was not raised at the district court level and there is no record available to review his claim. "Such Brady challenges present fact-based judgments that cannot be adequately first made on appellate review. That is why Brady challenges must be brought to the district court's attention, winnowed by the trial judge, and made part of the record through a motion for a new trial." United States v. Gonzales, 436 F.3d 560, 580 (5th Cir. 2006). Therefore, we will not reverse Cardona's conviction on the basis of his Brady/Giglio claim.

<h2 style="text-align:center">III. CONCLUSION</h2>

Cardona's convictions and sentence are AFFIRMED. Kelly Cardona's convictions are AFFIRMED. Whittington's conviction is AFFIRMED. Whittington's sentence is VACATED and REMANDED for resentencing.